UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

In re THIRD AVENUE MANAGEMENT
LLC SECURITIES LITIGATION

———————————————————————

This Document Relates To:

    ALL ACTIONS.

——————————————————————— x

:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:16-cv-02758-PKC

CLASS ACTION

PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
SETTLEMENT

## TABLE OF CONTENTS

**Page**

I.    THE LITIGATION ...................................................................................................2

II.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..................5

    A.    The Standards for Reviewing a Proposed Settlement for Preliminary Approval ...............................................................................................................5

    B.    An Analysis of the Factors Considered by the Second Circuit at Final Approval Supports Preliminary Approval of the Settlement...................................7

        1.    The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement............................................................8

        2.    The Reaction of the Class to the Settlement .................................................9

        3.    The Stage of the Proceedings......................................................................10

        4.    The Risks of Establishing Liability and Damages .....................................11

        5.    The Risks of Maintaining the Class Action Through Trial.........................12

        6.    The Ability of Defendants to Withstand a Greater Judgment....................12

        7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.........................................13

III.    THE PROPOSED CLASS SHOULD BE CERTIFIED TO EFFECTUATE THE SETTLEMENT...................................................................................................14

    A.    The Standards for Class Certification ..................................................................15

    B.    The Proposed Class Satisfies the Requirements of Rule 23 .................................16

        1.    Numerosity...................................................................................................16

        2.    Commonality................................................................................................16

        3.    Typicality ....................................................................................................17

        4.    Adequacy.....................................................................................................18

        5.    The Proposed Class Satisfies the Requirements of Rule 23(b) – Common Questions of Law Predominate and a Class Action Is Superior to Multiple Individual Actions....................................................19

**Page**

IV.     THE NOTICE PROGRAM IS ADEQUATE AND CONSTITUTES DUE AND
        SUFFICIENT NOTICE UNDER RULE 23, DUE PROCESS, AND THE PSLRA.........20

V.      PROPOSED SCHEDULE .................................................................................................22

VI.     CONCLUSION...............................................................................................................23

# TABLE OF AUTHORITIES

Page

## CASES

*Allen v. Dairy Farmers of Am., Inc.*,
  No. 5:09-cv-230, 2011 WL 1706778 (D. Vt. May 4, 2011) ..................................................5, 6

*Amchem Prods. v. Windsor Inc.*,
  521 U.S. 591 (1997)...........................................................................................................15

*Baffa v. Donaldson*,
  222 F.3d 52 (2d Cir. 2000)................................................................................................18

*Cent. States Se. & Sw. Areas Health & Welfare*
*Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)..........................................................................................16, 17

*City of Providence v. Aéropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 WL 1883494
  (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ............................................................................................6

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)................................................................................................16

*Cromer Fin. Ltd. v. Berger*,
  205 F.R.D. 113 (S.D.N.Y. 2001) .......................................................................................20

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).......................................................................................7, 8, 11

*Epstein v. MCA, Inc.*,
  50 F.3d 644 (9th Cir. 1995), *rev'd on other grounds*
  *sub nom. Matsushita Elec. Indus. Co. v. Epstein*,
  516 U.S. 367 (1996)...........................................................................................................15

*Hicks v. Morgan Stanley*,
  No. 01 Civ. 10071 (RJH), 2005 WL 2757792
  (S.D.N.Y. Oct. 24, 2005) .....................................................................................................8

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987) ......................................................................................14

*In re Alloy, Inc. Sec. Litig.*,
  No. 03 Civ. 1597 (WHP), 2004 WL 2750089
  (S.D.N.Y. Dec. 2, 2004)...............................................................................................8, 11

- iii -

Page

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  No. MDL 1500, 2006 WL 903236
  (S.D.N.Y. Apr. 6, 2006).......................................................................................8, 11, 12, 14

*In re Arakis Energy Corp. Sec. Litig.*,
  No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246
  (E.D.N.Y. Apr. 30, 1999).................................................................................................19

*In re Blech Sec. Litig.*,
  187 F.R.D. 97 (S.D.N.Y. 1999) .............................................................................15, 19, 20

*In re Currency Conversion Fee Antitrust Litig.*,
  No. 01 MDL 1409, 2006 WL 3247396
  (S.D.N.Y. Nov. 8, 2006) ...................................................................................................5

*In re Delphi Corp. Sec.*,
  248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................................6

*In re Deutsche Telekom AG Sec. Litig.*,
  229 F. Supp. 2d 277 (S.D.N.Y. 2002)................................................................................17

*In re Enron Corp. Sec.*,
  228 F.R.D. 541 (S.D. Tex. 2005)........................................................................................14

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................7, 11, 14

*In re Host Am. Corp. Sec. Litig.*,
  No. 05-CV-1250 (VLB), 2007 U.S. Dist. LEXIS 77418
  (D. Conn. Oct. 18, 2007)...................................................................................................13

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................................6, 13

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) .........................................................................................17

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) ...........................................................................................9

*In re Initial Pub. Offering Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006).................................................................................................15

- iv -

**Page**

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ...........................................................................6

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................5, 6

*In re Nassau Cty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006) ...............................................................................19

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) .........................................................................16

*In re Omnicom Grp., Inc. Sec. Litig.*,
   No. 02 Civ. 4483 (RCC), 2007 U.S. Dist. LEXIS 31963
   (S.D.N.Y. Apr. 30, 2007) ...................................................................................19

*In re Pfizer Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) .........................................................................17

*In re Platinum & Palladium Commodities Litig.*,
   No. 10cv3617, 2014 WL 3500655
   (S.D.N.Y. July 15, 2014) ..................................................................................5, 7

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) .................................................................14, 17

*In re Sadia*,
   269 F.R.D. 298 (S.D.N.Y. 2010) .......................................................................17

*In re Sadia S.A. Sec. Litig.*,
   No. 08 Civ. 9528 (SAS), 2011 WL 6825235
   (S.D.N.Y. Dec. 28, 2011) .....................................................................................6

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) .................................................................17

*In re Visa Check/MasterMoney Antitrust Litig.*,
   192 F.R.D. 68 (E.D.N.Y. 2000),
   *aff'd*, 280 F.3d 124 (2d Cir. 2001)....................................................................20

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)...............................................................................19

1237836_2

Page

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) .........................................................................18

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004).............................................................................12

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515 (WHP), 2008 WL 5110904
  (S.D.N.Y. Nov. 20, 2008) ...................................................................................7

*Lapin v. Goldman Sachs & Co.*,
  254 F.R.D. 168 (S.D.N.Y. 2008) .....................................................................16

*Maywalt v. Parker & Parsley Petroleum Co.*,
  147 F.R.D. 51 (S.D.N.Y. 1993) .......................................................................16

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)..............................................................................14

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003).................................................................9

*Teachers' Ret. Sys. v. ACLN Ltd.*,
  No. 01 Civ. 11814 (LAP), 2004 U.S. Dist. LEXIS 25927
  (S.D.N.Y. Dec. 27, 2004)..................................................................................17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)..................................................................................5

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)................................................................................15

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §77k....................................................................................................................3
  §77k(e)..............................................................................................................11
  §77l(a)(2) ............................................................................................................3
  §77o....................................................................................................................3

**Page**

Federal Rules of Civil Procedure

Rule 23 .............................................................................................................14, 15, 16
Rule 23(a) .......................................................................................................15, 16, 20
Rule 23(a)(1) .................................................................................................................16
Rule 23(a)(2) ..........................................................................................................16, 17
Rule 23(a)(3) .................................................................................................................17
Rule 23(a)(4) .................................................................................................................18
Rule 23(b) .......................................................................................................15, 19, 20
Rule 23(b)(3) ..........................................................................................................16, 19
Rule 23(c)(1)(C) ...........................................................................................................12
Rule 23(c)(2) .................................................................................................................21
Rule 23(e) .....................................................................................................................20
Rule 23(e)(1) .................................................................................................................21

1237836_2

Lead Plaintiff IBEW Local No. 58 Sound & Communication Division Retirement Plan ("IBEW 58") and plaintiff Anthony Dallacasa (together, "Plaintiffs") submit this memorandum in support of their unopposed motion for preliminary approval of the settlement reached in this Action (the "Settlement"). The Settlement provides a recovery of $14,250,000 in cash to resolve this securities class action against defendants Third Avenue Trust (the "Trust"), Third Avenue Management LLC (the "Advisor"), Affiliated Managers Group, Inc. ("AMG"), M.J. Whitman LLC ("MJW"), William E. Chapman, II, Lucinda Franks, Edward J. Kaier, Patrick Reinkemeyer, Eric P. Rakowski, Martin Shubik, Charles C. Walden, Martin J. Whitman, David M. Barse, Vincent J. Dugan, Jack W. Aber, Marvin Moser (the "Defendants"). The terms of the Settlement are set forth in the Stipulation of Settlement dated March 31, 2017 (the "Stipulation"), and filed concurrently herewith.[1]

By this motion, Plaintiffs seek entry of an order: (1) granting preliminary approval of the Settlement; (2) certifying the Class solely for settlement purposes; (3) approving the form and manner of giving notice of the Settlement to the Class; and (4) setting a hearing date for final approval thereof (the "Settlement Hearing") and a schedule for various deadlines relevant thereto. As shown below, the Settlement is a highly favorable result for the Class under the circumstances, is fair, reasonable, and adequate under the governing standards in this Circuit, and warrants preliminary and ultimately final approval of this Court.

---

[1]   Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation.

1237836_2

## I.     THE LITIGATION

Third Avenue Focused Credit Fund (the "Fund") is one of a family of open-end mutual funds offered by the Trust, which is organized as a Delaware Statutory Trust and registered as an investment company under the Investment Company Act of 1940, 15 U.S.C. §80a-1 *et seq*.

Since its inception in 2009, the Fund has had a stated investment objective of seeking long-term total return by, among other things, investing a substantial amount of its assets in credit instruments that are rated below investment grade.  As investors in an open-end mutual fund, shareholders purchased and redeemed shares in transactions directly with the Fund at the Net Asset Value ("NAV").  During 2015, the Fund experienced a significant increase in the amount of redemptions by shareholders.  The Fund sold assets for cash to meet redemption obligations.  By December 9, 2015, shareholders were no longer able to redeem shares for cash because the Fund was unable to generate sufficient cash to meet redemptions without resorting to asset sales at prices that would further disadvantage the remaining shareholders of the Fund.

As a result, on December 9, 2015, with shares in the Fund down more than 45% below their Class Period high, the Fund's Board of Trustees determined to place the Fund's assets in a liquidating trust and initiate a plan of liquidation for the orderly sale of Fund assets and the distribution of proceeds to shareholders (the "Liquidation").  The Fund then requested that the Securities and Exchange Commission ("SEC") allow the Fund to suspend redemptions.   On December 16, 2015, the SEC entered an order permitting the temporary suspension of the right of redemption for the protection of the Fund's security holders, and all assets were transferred from the liquidating trust back to the Fund.  The Fund is currently being liquidated pursuant to the plan of liquidation and the SEC's December 16, 2015 order.

1237836_2

Between January 15, 2016 and April 8, 2016, seven actions were filed against certain or all of Defendants based on alleged misrepresentations in the Fund's Registration Statement and/or the management and operation of the Fund.  Four of the actions brought federal securities claims and three actions brought derivative claims.

On May 13, 2016, the Court consolidated the four Original Securities Actions, captioned the Action *In re Third Avenue Management LLC Securities Litigation*, No. 16-cv-2758-PKC, and named plaintiff IBEW 58 as Lead Plaintiff in this Action.

On July 12, 2016, Plaintiffs in this Action filed a Consolidated Amended Complaint for Violations of the Federal Securities Laws ("CAC").  The CAC alleged causes of action for violations of Sections 11, 12(a), and 15 of the Securities Act of 1933, and alleged, *inter alia*, that: (i) the Fund's Registration Statement misrepresented the liquidity of the Fund's portfolio and did not maintain a level of portfolio liquidity under the circumstances; (ii) the Fund misrepresented the shareholders' ability to redeem shares as a result of the Fund's insufficient liquidity and that a substantial amount of redemptions could negatively impact the Fund's NAV; (iii) the Fund inaccurately marketed itself as a "high-yield" fund, when it was actually a "highly illiquid distressed debt fund"; (iv) the Fund misrepresented its ability to properly value securities because the Fund did not properly identify illiquid securities or take into account the illiquid nature of its assets when determining their values; (v) the Fund's Registration Statement contained false and misleading sworn certifications; and (vi) the Fund did not comply with the SEC's requirement in Form N-1A that mutual fund prospectuses disclose the principal risks of investing in the Fund.

On September 30, 2016, the Defendants filed a motion to dismiss this Action in its entirety. Thereafter, on December 2, 2016, Plaintiffs filed an opposition to Defendants' motion to dismiss.

- 3 -

1237836_2

At the suggestion of the Court, on December 13, 2016, the Settling Parties participated in a mediation session with the Honorable Layn R. Phillips (Ret.) ("Judge Phillips"), a former United States District Court Judge, which was also attended by the parties in the Delaware Derivative Action.[2]

On January 6, 2017, following further discussions among the Settling Parties and Judge Phillips, the Settling Parties reached an agreement in principle to settle this Action.  On January 13, 2017, following further discussions among the parties to the Delaware Derivative Action and Judge Phillips, the parties to that action reached an agreement in principle to settle that action.

Thereafter, the Settling Parties engaged in negotiations and agreed to a Term Sheet setting forth the general terms of a settlement.  The Settling Parties then engaged in negotiations over the Stipulation.  Numerous drafts of the stipulation and its exhibits were exchanged until an agreement on the complete terms of the Settlement was reached, which are set forth in the Stipulation.  A condition precedent to Plaintiffs entering into the Stipulation was the completion of confirmatory discovery concerning factual representations made by Defendants at the mediation.  Defendants produced documents in response to Plaintiffs' counsel's requests, concerning, among other things, the involvement of certain Defendants in the wrongdoing alleged by Plaintiffs, the financial condition of the Advisor, and the negative consequences suffered by the Advisor due to the suspension of redemptions of shares of the Fund.  Plaintiffs' counsel conducted an interview of a senior executive of the Advisor concerning these and other issues.  After the completion of confirmatory discovery, the Settling Parties entered into the Stipulation on March 31, 2017.

---

[2]    The Delaware Derivative Action refers to the following derivative actions:  *Wagner v. Third Avenue Management LLC, et al.*, CA. No. 12184-VCL and *Krasner v. Third Avenue Management LLC, et al.*, No. 12681-VCL, which were consolidated by the Delaware Court.

- 4 -

## II.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.     The Standards for Reviewing a Proposed Settlement for Preliminary Approval

Once a settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval.  In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006);[3] *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled. . . .  In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.").  "In determining whether to grant preliminary approval, the court starts with the proposition that 'there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.'"  *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011).

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted.  *See NASDAQ*, 176 F.R.D. at 102; *In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014) ("Preliminary approval, at issue here, 'is at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'  A district court should preliminarily approve a proposed settlement which 'appears to be

---

[3]     Citations and footnotes are omitted throughout unless otherwise noted.

the product of serious, informed non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval.'").  "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ*, 176 F.R.D. at 102.  "Preliminary approval is merely the first step in a multi-step process in which the . . . Settlement will be scrutinized by both the court and class members." *Allen*, 2011 WL 1706778, at *2.  "It deprives no party or non-party of any procedural or substantive rights, and provides a mechanism through which class members who object to the . . . Settlement can voice those objections." *Id.*  A strong initial presumption of fairness attaches to a proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations with an experienced mediator,[4] and courts should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *3 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012); *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011).

---

[4]   *See In re Delphi Corp. Sec.*, 248 F.R.D. 483, 498 & n.14 (E.D. Mich. 2008) (recognizing "the outstanding work done by Judge Phillips" in settlement negotiations and "the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions").

**B.    An Analysis of the Factors Considered by the Second Circuit at Final Approval Supports Preliminary Approval of the Settlement**

As discussed herein, the proposed Settlement is a good result for the Class under the circumstances.  It provides a recovery in a case where Plaintiffs faced hurdles to proceeding with the Action, proving liability and damages and even if successful after trial, collecting on any judgment was a major concern.  As a result, the Settlement is within the range of what would be determined to be fair, reasonable, and adequate.  Plaintiffs also submit that an analysis of the *Grinnell* factors (*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)), set forth below, which apply to a court's determination of final approval of a settlement, also supports preliminary approval of the Settlement. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, 'the Court need only find that the proposed settlement fits "within the range of possible approval"' to proceed."); *Platinum*, 2014 WL 3500655, at *12 ("At preliminary approval, it is not necessary to exhaustively consider the factors applicable to final approval.").

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  "[N]ot every factor must weigh in favor of settlement, 'rather the court should consider the totality of the[] factors in light of the particular circumstances.'" *In re Global*

*Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).  Although final approval is not sought at this time, an analysis of the *Grinnell* factors supports preliminary approval of the Settlement.

### 1.  The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement

Courts have consistently recognized that the complexity, expense, and likely duration of the litigation are critical factors in evaluating the reasonableness of a settlement, especially where the settlement being evaluated is a securities class action.  *See, e.g.*, *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *5-*6 (S.D.N.Y. Oct. 24, 2005); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (approving settlement, noting action involved complex securities fraud issues "that were likely to be litigated aggressively, at substantial expense to all parties"); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) (due to their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").

This case is no exception.  Plaintiffs advanced numerous complex and novel legal and factual issues under the Securities Act, many of which would require expert discovery and testimony.  Here, the Fund portrayed itself as a typical open-end "high-yield" bond mutual fund.  CAC, ¶36.  As an open-end mutual fund, under SEC guidelines, no more than 15% of the Fund's portfolio was permitted to be invested in illiquid securities and the Fund was required to maintain a level of portfolio liquidity appropriate under the circumstances.  Throughout the Class Period, however, Plaintiffs allege that the Fund understated the amount of illiquid securities it held and failed to disclose it was not maintaining a level of portfolio liquidity appropriate under the circumstances.

- 8 -

These allegations advanced numerous complex legal and factual issues, most of which would require expert discovery and testimony.

At the time of settlement, document discovery had yet to start and Defendants' motion to dismiss the CAC was pending.  Assuming Plaintiffs prevail at the pleading stage, "'a vast amount of additional factual and expert discovery remains to prepare for trials, and motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable.'"  *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 117 (S.D.N.Y. 2009).  If after the completion of discovery, Plaintiffs defeated Defendants' likely motion(s) for summary judgment, the trial of this Action would be complicated for jurors, and would be expensive for the Class, given the amount of fact and expert discovery that would be needed to be taken if the Action continued.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").  Accordingly, analysis of this factor supports approval of the Settlement.

## 2.    The Reaction of the Class to the Settlement

Plaintiffs have participated throughout the prosecution of the Action and were actively involved in the decision to enter into the Settlement.  Notice regarding the Settlement has not yet been mailed or otherwise distributed to Class Members.  In the event any objections are received after notice is disseminated, they will be addressed by Lead Counsel in connection with Plaintiffs' motion for final approval of the Settlement.

1237836_2

### 3.      The Stage of the Proceedings

The volume and substance of Plaintiffs' and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are unquestionably adequate to support the Settlement. This knowledge is based, first and foremost, on Lead Counsel's extensive investigation during the prosecution of this Action, including, *inter alia*: (i) review of press releases, public statements, SEC filings, regulatory filings and reports, and securities analysts' reports and advisories about the Fund and Defendants; (ii) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (iii) consultation with experts on liquidity, asset valuations, and mutual funds; and (iv) filing the detailed CAC.

Moreover, at the time of the Settlement, Defendants had filed their opening brief in support of their motion to dismiss and Plaintiffs had filed their brief in opposition.  These briefs highlighted the factual and legal issues in dispute.  In addition, at the suggestion of the Court on December 13, 2016, the Settling Parties participated in a mediation session with Judge Phillips.  Prior to the mediation, the Settling Parties exchanged detailed mediation statements which further highlighted the factual and legal issues in dispute.  During the mediation, the Settling Parties' respective positions were fully vetted.

Plaintiffs also engaged in confirmatory discovery concerning factual representations made by Defendants at the mediation.  Defendants produced documents in response to Plaintiffs' counsel's requests, concerning, among other things, the involvement of certain Defendants in the wrongdoing alleged by Plaintiffs, the financial condition of the Advisor, and the negative consequences suffered by the Advisor due to the suspension of redemptions of shares of the Fund.  Plaintiffs' counsel also conducted an interview of a senior executive of the Advisor concerning these and other issues.

- 10 -

The accumulation of this information permitted Plaintiffs and Lead Counsel to be well-informed about the strengths and weaknesses of their case and to engage in effective settlement discussions. *See Global Crossing*, 225 F.R.D. at 458 ("the question is whether the parties had adequate information about their claims"). This factor also supports approval of the Settlement.

### 4.      The Risks of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463. Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet. *See AOL Time Warner*, 2006 WL 903236, at *11 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 WL 2750089, at *2 (finding that issues present in securities action presented significant hurdles to proving liability).

While Plaintiffs believe that their claims would be borne out by the evidence, they also recognize that they face hurdles to proving liability. Defendants have articulated various defenses to Plaintiffs' allegations that may have been accepted by the Court at the pleading or summary judgment stages, or by the jury at trial. Among other things, Defendants would dispute Plaintiffs' assertion that, under SEC guidelines, no more than 15% of the Fund's portfolio was permitted to be invested in illiquid securities. Additionally, Defendants asserted that liquidity is subjective and would argue that the Fund's portfolio was appropriately liquid. Plaintiffs also would have faced a loss causation defense to damages under 15 U.S.C. §77k(e) which allows a defendant to establish that "any portion or all of such damages" were caused by something other than the alleged misrepresentation or omissions. Defendants would have argued that a tightening of the distressed

- 11 -

debt market caused the Fund's securities to become illiquid after they were purchased and that the alleged misrepresentations did not cause any losses.  If successful, Plaintiffs' damages could be zero.

As a result, Plaintiffs also faced substantial risks in establishing loss causation and damages. As with contested liability issues, issues relating to loss causation and damages would also have likely come down to an inherently unpredictable and hotly disputed "battle of the experts." Accordingly, in the absence of a settlement, there is a very real risk that the Class would recover an amount significantly less than the total settlement amount – or even nothing at all.  Thus, the certain and immediate payment of $14,250,000, when viewed in the context of the risks and the uncertainties involved in this Action, weighs in favor of approval of the Settlement.

### 5.      The Risks of Maintaining the Class Action Through Trial

While the Class has not yet been certified in this Action, Plaintiffs and their counsel believe that if such motion was filed it would be granted.  *See AOL Time Warner*, 2006 WL 903236 (finding the risk of plaintiffs not succeeding in certifying class supported approval of settlement).  Even if a motion for class certification was granted pursuant to Fed. R. Civ. P. 23(c)(1)(C): "An order that grants or denies class certification may be altered or amended before final judgment."  Thus, if the Class was certified, there would still remain a risk that the class certification would not be maintained through trial.  Thus, this factor weighs in favor of the Settlement.

### 6.      The Ability of Defendants to Withstand a Greater Judgment

A court may consider a defendant's ability to withstand a judgment greater than the settlement amount, although it is not generally one of the determining factors.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (affirming district court's finding that defendant's ability to pay more was irrelevant to assessment of settlement).  Indeed, "a defendant is

- 12 -

not required to "'empty its coffers'" before a settlement can be found adequate." *IMAX*, 283 F.R.D. at 191.

Here, however, this factor should be afforded great consideration. The financial condition of the Trust and the Advisor were a serious concern and a driving force behind Plaintiffs entering into the Settlement at this stage as well as the amount that was agreed upon. The collapse of the Fund, the suspension of redemptions, and the need to liquidate the Fund's assets over time, negatively impacted the financial and business condition of the Advisor and the other funds affiliated with the Advisor. The problems at the Fund had tainted the other Third Avenue funds, causing a large exodus of existing customers from the funds and making it difficult to obtain new capital investments. The other funds managed by the Advisor experienced substantial net redemptions resulting in a large decline in assets under management and related management fees earned by the Advisor. For example, the Assets under management for the Value Fund, Small-Cap Value Fund, Real Estate Value Fund, and International Value Fund managed by the Advisor decreased between 26%-47%. In addition, by the time of settlement negotiations, available insurance had been materially depleted and there was a risk all insurance would be exhausted by the time of trial. As a result, there was a risk that Defendants would not be able to pay an award higher than the Settlement Amount, even if Plaintiffs prevailed at trial. Thus, this factor strongly supports approval of the Settlement. *See In re Host Am. Corp. Sec. Litig.*, No. 05-CV-1250 (VLB), 2007 U.S. Dist. LEXIS 77418, at *15 n.2 (D. Conn. Oct. 18, 2007) (the company's financial condition was a "significant factor underlying both the timing and substance of the parties' settlement").

### 7.   The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and

weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").  In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").  The Settlement represents a good result under the circumstances especially considering the Fund's financial condition and the amount of available resources if the litigation continued.  As the court stated when approving one of the settlements in the *Enron ERISA* litigation:  "The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand."  *In re Enron Corp. Sec.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005).

## III.   THE PROPOSED CLASS SHOULD BE CERTIFIED TO EFFECTUATE THE SETTLEMENT

In deciding whether to preliminarily approve a proposed settlement, the court must determine whether the class may be certified for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure.  Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995).  The Second Circuit, in particular, has recognized that "'settlement classes have proved to be

- 14 -

quite useful in resolving major class action disputes.'" *Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982). Moreover, "[c]lass action treatment . . . is particularly appropriate when plaintiffs seek redress for violations of the securities laws," and "[a]ccordingly, in [securities cases], when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999); *see also Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996) (holding that securities actions alleging misstatements or omissions fit the requirements of Rule 23 "like a glove").

### A.     The Standards for Class Certification

"[A] district judge may certify a class only after making a determination that each of the Rule 23 requirements has been met . . . ." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Rule 23(a) sets forth four prerequisites to class certification, which are commonly referred to as: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. In addition, the class must meet one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P. 23. While a settlement class, like other certified classes, must satisfy Rules 23(a) and (b), the manageability concerns of Rule 23(b) are not at issue in certification of a settlement class. *Amchem Prods. v. Windsor Inc.*, 521 U.S. 591, 593 (1997). Here, the Settling Parties are asking the Court to certify the following Class for settlement purposes only:

> all Persons who purchased shares of the Fund during the period from March 1, 2013 through December 10, 2015. Excluded from the Class are Defendants, employees, officers and directors of the Defendant entities, members of the immediate families of each of the Individual Defendants, the estates of the deceased Individual Defendants, any Person in which any Defendant has a controlling interest and, as to such excluded Person, the legal and personal representatives, agents, assigns and heirs, successors or assigns of any such excluded Person. Also excluded from the Class are any Class Members who timely and validly exclude themselves from the Class in accordance with the requirements set forth in the Notice.

- 15 -

1237836_2

As set forth below, Plaintiffs respectfully submit that the Class satisfies each of the requirements of Rules 23(a) and 23(b)(3), and accordingly, the Court should certify the proposed Class for settlement purposes.

### B. The Proposed Class Satisfies the Requirements of Rule 23

#### 1. Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. *See Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 55 (S.D.N.Y. 1993). Here, the Fund shares traded throughout the Class Period, and there were more than 100 million shares outstanding. *See, e.g.*, *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009) ("In securities class actions 'relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'"). While the exact number of Class Members is unknown, purchasers of the Fund's shares are believed to number in the hundreds, or thousands, making joinder of all Class Members impractical. *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008) (class of shareholders numbering in hundreds or thousands satisfied the numerosity requirement). Thus, the numerosity requirement of Rule 23(a)(1) is satisfied.

#### 2. Commonality

Rule 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Securities cases like this one easily meet the commonality requirement, where "'putative class members have

- 16 -

been injured by similar misrepresentations and omissions.'" *In re Pfizer Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012).

Here, all Class Members purchased the Fund's shares during the Class Period based upon the misrepresentations and omissions of material fact alleged in the CAC. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 85 (S.D.N.Y. 2007); *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 281 (S.D.N.Y. 2002). Accordingly, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3.    Typicality

The typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members. *See Prudential*, 163 F.R.D. at 208 (finding typicality where plaintiffs alleged that defendants committed the same acts, in the same manner against all class members). Typicality is established where "'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Cent. States*, 504 F.3d at 245; *In re Sadia*, 269 F.R.D. 298, 304-05 (S.D.N.Y. 2010).

Plaintiffs' claims are typical of the claims of other Class Members because their losses derive from the same alleged course of Defendants' conduct. Where, as here, "the lead plaintiff alleges a common pattern of wrongdoing and will present the same evidence, based on the same legal theories, to support its claim as other members of the proposed class, courts have held the typicality requirement to be satisfied." *Teachers' Ret. Sys. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 U.S. Dist. LEXIS 25927, at *12 (S.D.N.Y. Dec. 27, 2004); *see also In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002); *Deutsche Telekom*, 229 F. Supp. 2d at 281. Therefore, Plaintiffs' claims are typical of the claims of the Class, and thus, Rule 23(a)(3) is satisfied.

1237836_2

4.        **Adequacy**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, the proposed class representative must be free of interests that are antagonistic to the other members of the class, and counsel representing the class must be qualified, experienced and capable of conducting the litigation. *See Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000). "[M]any courts have observed [that] the issues of typicality and adequacy tend to merge because they 'serve as guideposts for determining whether . . . the named plaintiff's claims and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007).

As described above, Plaintiffs' claims are typical of and coextensive with those of the other members of the Class. Plaintiffs have demonstrated their ability and willingness to pursue the Action. They have actively prosecuted the Action through, among other things, their investigation of the claims and defenses that were and/or could have been asserted, their defense of their claims from Defendants' motion to dismiss, and their retention of attorneys with extensive experience in the area of securities class action litigation. Robbins Geller has substantial experience in securities class action litigation and have successfully prosecuted many securities and other complex class actions in courts throughout the United States. *See* www.rgrdlaw.com. Thus, Plaintiffs are adequate representatives of the Class, and their counsel are qualified, experienced and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).

5.    **The Proposed Class Satisfies the Requirements of Rule 23(b) –
Common Questions of Law Predominate and a Class Action Is
Superior to Multiple Individual Actions**

Finally, a class must also satisfy one of the three subparts of Rule 23(b).  To ensure that the

class action is more efficient than individual actions, Rule 23(b) requires that common issues

predominate over any issues that may be particular to the class representatives.  Generally, common

questions will predominate if the common issue constitutes a significant part of each of the class

members' individual cases.  *See Blech*, 187 F.R.D. at 107; *see also In re Omnicom Grp., Inc. Sec.

Litig.*, No. 02 Civ. 4483 (RCC), 2007 U.S. Dist. LEXIS 31963, at *22 (S.D.N.Y. Apr. 30, 2007)

(citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)); *In re

Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, at *37

(E.D.N.Y. Apr. 30, 1999) ("In securities fraud class actions . . . common issues of law and fact will

generally predominate over individual issues.").

The Action involves the type of "'common nucleus of operative facts and issues' with which

the predominance inquiry is concerned."  *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 228

(2d Cir. 2006).  As noted above, Plaintiffs have alleged that Defendants made materially false and

misleading statements during the Class Period regarding the amount of illiquid securities the Fund

held and failed to disclose it was not maintaining a level of portfolio liquidity appropriate under the

circumstances.  If Plaintiffs and each of the other Class Members were to bring individual actions,

they would each be required to prove the same wrongdoing by Defendants in order to establish

liability.

As further required by Rule 23(b)(3), "a class action [must be] superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Where a

class action is a superior method, the interests of class members in individually controlling the

- 19 -

prosecution of separate claims will be generally outweighed by the efficiency of the class mechanism, and each individual claim will be too small to make most individual suits practical. *In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 88 (E.D.N.Y. 2000) (stating "[w]ithout class certification," it is highly likely that many plaintiffs "will lose any practical means of obtaining damages for [a] defendant['s] allegedly illegal conduct"), *aff'd*, 280 F.3d 124 (2d Cir. 2001). Securities class actions generally meet the superiority requirement. *Blech*, 187 F.R.D. 97.

This is a fairly typical securities class action, with hundreds, if not thousands, of Class Members. Because many members of the Class are likely to possess a claim that is too small to warrant filing a separate action, the class action device is the only viable method by which the overwhelming majority of persons injured by Defendants' wrongful conduct may obtain a remedy. Moreover, separate actions would "risk disparate results among those seeking redress," "encourage a race to judgment given the limited funds available to fund recovery here," "exponentially increase the costs of litigation for all," and "be a particularly inefficient use of judicial resources." *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001).

In light of the foregoing, all of the requirements of Rules 23(a) and 23(b) are satisfied. Accordingly, Plaintiffs respectfully request that the Court certify the Class for settlement purposes and appoint them as class representatives.

## IV.   THE NOTICE PROGRAM IS ADEQUATE AND CONSTITUTES DUE AND SUFFICIENT NOTICE UNDER RULE 23, DUE PROCESS, AND THE PSLRA

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions. The Rule provides that a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. The Rule provides, "[t]he court must direct notice in a

- 20 -

reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

Here, the parties have negotiated the Notice to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort. The parties further propose to supplement the mailed Notice with a summary notice (the "Summary Notice"), to be published once in the *The Wall Street Journal* and once over the *Business Wire* or *PR Newswire*. The Notice and Summary Notice are attached to the Stipulation and the Preliminary Approval Order as Exhibits A-1 and A-3, respectively.

As required by Federal Rule of Civil Procedure 23(c)(2) and the PSLRA, the Notice describes the nature of the Action; sets forth the definition of the Class; states the Class' claims; and discloses the right of Class Members to exclude themselves from the Class, as well as the deadline and procedure for doing so and warns of the binding effect of the settlement approval proceedings on Class Members who do not exclude themselves. The Notice also describes the Settlement; the Settlement Fund, both in the aggregate and on an average per-share basis; explains the proposed Plan of Allocation; states the parties' disagreement over damages and other issues; and sets out the amount of attorneys' fees and expenses that counsel for Plaintiffs intend to seek in connection with final settlement approval, including the amount of the requested fees and expenses determined on an average per-share basis; provides contact information for Lead Counsel, including a toll-free telephone number; and summarizes the reasons the parties are proposing the Settlement. The Notice also discloses the date, time, and place of the formal fairness hearing, and the procedures for objecting to the Settlement, the Plan of Allocation, and/or counsel's request for attorneys' fees and expenses, and appearing at the hearing. The contents of the Notice therefore satisfy all applicable

- 21 -

requirements.  Moreover, the format is the same or similar to formats that have been approved by many courts in this jurisdiction.

Lastly, as part of the preliminary approval of the Settlement, the Plaintiffs also respectfully request the appointment of Gilardi & Co. LLC ("Gilardi") as Claims Administrator.  As Claims Administrator, Gilardi will be responsible for, among other things, mailing the Notices to the Class, publishing the Summary Notice, and reviewing and processing claims from Class Members.  Gilardi has extensive experience in settlement administration and will more than adequately fulfill its duties in this case.  *See* www.gilardi.com.

## V.    PROPOSED SCHEDULE

If the Court grants preliminary approval of the Settlement, the Plaintiffs respectfully submit the following procedural schedule for the Court's review:

| Event | Time for Compliance |
| --- | --- |
| Deadline for mailing the Notice and Proof of Claim and Release form to Class Members | 14 calendar days after entry of the Preliminary Approval Order ("Notice Date") |
| Deadline for publishing the Summary Notice | 14 calendar days after the Notice Date |
| Deadline for filing Proof of Claim and Release forms | 90 calendar days after the Notice Date |
| Deadline for submitting exclusion requests or objections | 60 calendar days after the Notice Date |
| Filing of memoranda in support of approval of the Settlement and Plan of Allocation, and in support of application for attorneys' fees and expenses | 14 calendar days prior to the date for submitting objections |
| Filing of reply memoranda | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | At least 100 calendar days following entry of the Preliminary Approval Order, at the Court's convenience |

- 22 -

1237836_2

## VI.     CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court preliminarily approve

the Settlement and enter the [Proposed] Order Preliminarily Approving Settlement and Providing for

Notice, which was agreed to by the Settling Parties.

DATED:  March 31, 2017                    Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          EVAN J. KAUFMAN
                                          ANDREW L. SCHWARTZ


                                                   s/ Evan J. Kaufman
                                          EVAN J. KAUFMAN

                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)
                                          srudman@rgrdlaw.com
                                          ekaufman@rgrdlaw.com
                                          aschwartz@rgrdlaw.com

                                          Lead Counsel for Lead Plaintiff

                                          SACHS WALDMAN, P.C.
                                          JOSEPH PAWLICK
                                          1423 East Twelve Mile Road
                                          Madison Heights, MI  48071
                                          Telephone:  248/658-0800
                                          248/658-0801 (fax)

                                          Additional Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I, Evan J. Kaufman, hereby certify that on March 31, 2017, I caused a true and correct copy

of the attached:

> Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary
> Approval of Settlement

to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such public filings to all counsel registered to receive such notice.



*s/ Evan J. Kaufman*
EVAN J. KAUFMAN