UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re THIRD AVENUE MANAGEMENT LLC SECURITIES LITIGATION | : | Civil Action No. 1:16-cv-02758-PKC |
| | : | CLASS ACTION |
| This Document Relates To: | : | STIPULATION OF SETTLEMENT |
| ALL ACTIONS. | : | |

This Stipulation of Settlement dated March 31, 2017 (the "Stipulation") is made and entered into pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and contains the terms of a settlement by and among the following parties to this Action (as defined below): (a) Lead Plaintiff IBEW Local No. 58 Sound & Communication Division Retirement Plan ("IBEW 58") and plaintiff Anthony Dallacasa (together, the "Plaintiffs"), on behalf of themselves and each of the Class Members (as defined below); and (b) defendants William E. Chapman, II, Lucinda Franks, Edward J. Kaier, Patrick Reinkemeyer, Eric P. Rakowski, Martin Shubik, Charles C. Walden, Martin J. Whitman, David M. Barse, Vincent J. Dugan, Jack W. Aber, Marvin Moser, Third Avenue Trust (the "Trust"), Third Avenue Management LLC (the "Advisor"), Affiliated Managers Group, Inc. ("AMG"), M.J. Whitman LLC ("MJW") (collectively, the "Defendants" and together with Plaintiffs, the "Settling Parties"), by and through their respective undersigned counsel and, as applicable, their respective authorized representatives.

This Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Plaintiffs' Claims (as defined below) against the Released Persons (as defined below), and all of the Released Defendants' Claims (as defined below), upon and subject to the terms and conditions hereof and subject to the approval of this Court.

## I. THE LITIGATION

Third Avenue Focused Credit Fund (the "Fund") is one of a family of open-end mutual funds offered by the Trust, which is organized as a Delaware Statutory Trust and registered as an investment company under the Investment Company Act of 1940, 15 U.S.C. §80a-1 *et seq*. The Advisor is the investment advisor to the funds offered by the Trust.

Since its inception in 2009, the Fund has had a stated investment objective of seeking long-term total return by, among other things, investing a substantial amount of its assets in credit

instruments that are rated below investment grade. As investors in an open-end mutual fund, shareholders purchased and redeemed shares in transactions directly with the Fund at the Net Asset Value ("NAV"). During 2015, the Fund experienced a significant increase in the amount of redemptions by shareholders. The Fund sold assets for cash to meet shareholders' redemption submissions. By December 9, 2015, shareholders were no longer able to redeem shares for cash because the Fund was unable to generate sufficient cash to meet redemptions without resorting to asset sales at prices that would disadvantage the remaining shareholders of the Fund.

As a result, on December 9, 2015, the Fund's Board of Trustees determined to place the Fund's assets in a liquidating trust and initiate a plan of liquidation for the orderly sale of Fund assets and the distribution of proceeds to shareholders (the "Liquidation"). The Fund then requested that the Securities and Exchange Commission ("SEC") allow the Fund to suspend redemptions. On December 16, 2015, the SEC entered an order permitting the temporary suspension of the right of redemption for the protection of the Fund's security holders, and all assets were transferred from the liquidating trust back to the Fund. The Fund is currently being liquidated pursuant to the plan of liquidation and the SEC's December 16, 2015 order.

On January 15, 2016, William Engel filed a complaint in New York State Supreme Court, County of New York, captioned *Engel v. Third Avenue Management Company, et al.*, No. 650196/2016 (the "Engel Action"), purporting to bring derivative claims against certain of the Defendants relating to the management and operation of the Fund and the Liquidation.

On January 27, 2016, Loi Tran filed a complaint in the United States District Court for the Central District of California (the "California Federal Court"), purporting to bring federal securities claims against certain Defendants (the "Tran Action").

On February 2, 2016, Inter-Marketing Group USA, Inc. filed a complaint in the California Federal Court, purporting to bring federal securities claims against certain Defendants (the "Inter-Marketing Group Action").

On February 3, 2016, Scott Matthews filed a complaint in the California Federal Court, purporting to bring federal securities claims against certain Defendants (the "Matthews Action").

On February 9, 2016, Suprabha Bhat filed a complaint in the California Federal Court, purporting to bring federal securities claims against certain Defendants (the "Bhat Action," and together with the Tran Action, the Inter-Marketing Group Action, and the Matthews Action, the "Original Securities Actions").

On February 12, 2016, the Engel Action was removed to this Court and was later re-captioned *Engel v. Third Avenue Management LLC, et al.*, No. 1:16-cv-01118-PKC. On March 8, 2016, William Engel filed an amended complaint in the Engel Action.

On April 1, 2016, Livio Broccolino filed a complaint in this Court, captioned *Broccolino v. Third Avenue Management Company LLC, et al.*, No. 1:16-cv-02436-PKC (the "Broccolino Action"), purporting to bring derivative claims against certain of the Defendants relating to the management and operation of the Fund and the Liquidation.

On April 8, 2016, Avi Wagner filed a complaint in the Court of Chancery of the State of Delaware (the "Delaware Court"), captioned *Wagner v. Third Avenue Management LLC, et al.*, C.A. No. 12184-VCL (the "Wagner Action"), purporting to bring class and derivative claims against certain of the Defendants relating to the management and operation of the Fund and the Liquidation.

On April 12, 2016, Livio Broccolino filed a motion to consolidate the Broccolino Action and the Engel Action in this Court.

On April 13, 2016, the Original Securities Actions were transferred to this Court.

On April 21, 2016, the Court denied plaintiff Broccolino's motion to consolidate and stayed the Broccolino Action pending resolution of the Engel Action.

On May 13, 2016, the Court consolidated the Original Securities Actions, captioned the Action *In re Third Avenue Management LLC Securities Litigation*, No. 16-cv-2758-PKC, and named plaintiff IBEW 58 as Lead Plaintiff in the Action.

On June 17, 2016, the defendants in the Engel Action filed motions to dismiss the Engel Action.

On July 12, 2016, Plaintiffs in this Action filed a Consolidated Amended Complaint for Violations of the Federal Securities Laws ("CAC"). The CAC alleged causes of action for violations of Sections 11, 12(a), and 15 of the Securities Act of 1933, and alleged, *inter alia*, that: (i) the Fund's Registration Statement misrepresented the liquidity of the Fund's assets, which Plaintiffs assert was greater than the Fund's purported 15% restriction on such holdings and parallel SEC guidance; (ii) the Fund misrepresented the shareholders' ability to redeem shares in light of the Fund's insufficient liquidity and the substantial amount of redemptions that could force the Fund to suspend redemptions; (iii) the Fund inaccurately marketed itself as a "high-yield" fund, when it was actually a "highly illiquid distressed debt fund"; (iv) the Fund misrepresented Defendants' ability to properly value securities because the Fund did not properly identify illiquid securities or take into account the illiquid nature of its assets when determining their values; (v) the Fund's Registration Statement contained false and misleading sworn certifications; and (vi) the Fund did not comply with the SEC's requirement in Form N-1A that mutual fund prospectuses disclose the principal risks of investing in the Fund.

On August 24, 2016, Daniel Krasner filed a complaint in the Delaware Court, captioned *Krasner v. Third Avenue Management LLC, et al.*, C.A. No. 12681-VCL (the "Krasner Action"),

purporting to bring class and derivative claims against certain of the Defendants relating to the management and operation of the Fund and the Liquidation.

On September 15, 2016, the Delaware Court entered an order consolidating the Krasner Action and the Wagner Action and directing plaintiffs to file a consolidated amended complaint to serve as the operative complaint in the consolidated action (the "Delaware Derivative Action").

On September 30, 2016, the Defendants filed a motion to dismiss this Action in its entirety.

On October 14, 2016, plaintiffs filed an amended derivative complaint in the Delaware Derivative Action.

On October 28, 2016, plaintiff Krasner filed a motion to intervene in the Engel Action.

On November 3, 2016, defendants filed motions to dismiss the Delaware Derivative Action, and, on November 21, 2016, the defendants filed an opening brief in support thereof, which Plaintiffs answered with an opposing brief on December 23, 2016.

On December 2, 2016, Plaintiffs filed an opposition to Defendants' motion to dismiss the CAC in this Action.

At the suggestion of the Court, on December 13, 2016, the Settling Parties and the parties in the Delaware Derivative Action participated in a mediation session with the Honorable Layn R. Phillips (Ret.) ("Judge Phillips"), a former United States District Court Judge.

On January 6, 2017, following further discussions among the Settling Parties and Judge Phillips, the Settling Parties reached an agreement in principle to settle the Action on the terms set forth herein.

On January 13, 2017, following further discussions among the parties to the Delaware Derivative Action and Judge Phillips, the parties to that action reached an agreement in principle to settle that action.

Plaintiffs engaged in confirmatory discovery concerning factual representations made by Defendants at the mediation. Defendants produced documents in response to Plaintiffs' counsel's requests, concerning, among other things, the involvement of certain Defendants in the wrongdoing alleged by Plaintiffs, the financial condition of the Advisor, and the negative consequences suffered by the Advisor due to the suspension of redemptions of shares of the Fund. Plaintiffs' counsel conducted an interview of a senior executive of the Advisor concerning these and other issues.

## II. CLAIMS OF PLAINTIFFS AND BENEFITS OF SETTLEMENT

Lead Counsel, on behalf of Plaintiffs, has conducted a thorough investigation relating to the claims and the underlying events and transactions alleged in the CAC. This investigation included, among other things, detailed analyses of public filings, press releases, public statements, investor communications, publicly available news articles and reports about Defendants and the Fund, and information obtained through confirmatory discovery. Plaintiffs also researched and analyzed the Fund's assets and relevant market data, including trading patterns and peer performance. Plaintiffs continue to believe that the claims asserted in the Action have merit. However, Plaintiffs and Plaintiffs' counsel recognize the significant expense, length, and complexity of continued proceedings necessary to prosecute the Action against Defendants through appeal and trial, even if Plaintiffs were ultimately to succeed on the merits. Plaintiffs' counsel have taken into account the uncertain outcome and the risk of litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. They also are mindful of the procedural posture of the case, the inherent problems of proof of, and defenses to, the allegations and claims asserted in the Action as well as the Defendants' financial resources and ability to fund a larger settlement or significant judgment if successful after trial and upheld after likely appeal(s).

Accordingly, Plaintiffs, through their counsel, conducted discussions and arm's-length negotiations with counsel for Defendants with the assistance of Judge Phillips, in an effort to settle the Action, and achieve the best relief possible for the benefit of the Class (as defined below).

Based upon its investigation and knowledge of the relevant legal issues and the confirmatory discovery that has been conducted, Lead Counsel has concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to Plaintiffs and the Class, and in their best interests. Lead Counsel and Plaintiffs believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class and each of the Class Members (as defined below), and have agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering: (a) the benefits that Plaintiffs and the members of the Class will receive from the settlement of the Action; (b) the attendant risks of continuing litigation; and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

## III. NO ADMISSION OF WRONGDOING BY DEFENDANTS

Defendants deny that they have committed or intended to commit any wrongdoing or violations of law arising out of any of the conduct, statements, acts, or omissions alleged in the Action, and maintain that their conduct was at all times proper and in compliance with applicable provisions of law (including the federal securities laws). Defendants further deny that they made any material misstatements or omissions in the Fund's offering materials; that Plaintiffs or the Class have suffered any damages; that Plaintiffs or the Class were harmed by any conduct that was or could have been alleged in the Action; or that any causal connection existed between the alleged misrepresentations and any alleged harm to Plaintiffs or the Class. The Individual Defendants (as defined below) deny the allegations against them concerning any alleged wrongdoing or violations

of law, and further assert that, at all relevant times, they acted in compliance with all applicable laws (including the federal securities laws), in good faith, and in a manner they reasonably believed to be in the best interests of the Fund.

Defendants, however, recognize the uncertainty and the risk of the outcome of any litigation, especially complex securities litigation, and the difficulties and substantial burden, expense, and length of time necessary to continue to defend this Action. To eliminate the burden and expense of further litigation, Defendants wish to settle the Action on the terms and conditions stated in this Stipulation and to put the Released Plaintiffs' Claims to rest finally and forever, without in any way acknowledging any wrongdoing, fault, liability, causation, or damages to Plaintiffs and the Class.

This Stipulation and all negotiations, discussions, and proceedings in connection herewith shall not be deemed or constitute a presumption, concession, or admission by any of the Settling Parties of any fault, liability, or wrongdoing by them, and shall not be interpreted, construed, deemed, involved, offered, or received in evidence or otherwise used by any Person in the Action, or in any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of this Stipulation. If the Settlement does not become effective, as set forth in ¶ 10.1, the Settling Parties shall revert to their respective litigation positions as if this Stipulation, and all negotiations, discussions, and proceedings in connection herewith, never existed.

## IV. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs (on behalf of themselves and each of the Class Members) and Defendants, by and through their respective undersigned counsel or attorneys of record, that without any admission or concession on the part of Plaintiffs of any lack of merit of the Action whatsoever, and without any admission or

concession by Defendants of any liability or wrongdoing or lack of merit in the defenses to the Action whatsoever, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the PSLRA, and in consideration of the benefits flowing to the Settling Parties from the Settlement, that all Released Plaintiffs' Claims as against the Released Persons, and all Released Defendants' Claims, shall be finally, fully, and forever compromised, settled, and released and the Action shall be dismissed with prejudice as to all Released Persons, upon and subject to the following terms and conditions:

**1. Definitions**

As used in this Stipulation, the following terms have the meanings specified below:

1.1 "Action" means the consolidated shareholder class action captioned *In re Third Avenue Management LLC Securities Litigation*, No. 16-cv-2758-PKC, pending in the United States District Court for the Southern District of New York.

1.2 "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.3 "Claims Administrator" means the firm of Gilardi & Co. LLC.

1.4 "Class" and "Class Members" mean all Persons who purchased shares of the Fund during the period from March 1, 2013 through December 10, 2015. Excluded from the Class are Defendants, employees, officers and directors of the Defendant entities, members of the immediate families of each of the Individual Defendants, the estates of the deceased Individual Defendants, any Person in which any Defendant has a controlling interest and, as to such excluded Person, the legal and personal representatives, agents, assigns and heirs, successors or assigns of any such excluded Person. Also excluded from the Class are any Class Members who timely and validly exclude themselves from the Class in accordance with the requirements set forth in the Notice.

1.5 "Class Period" means the period between March 1, 2013 through December 10, 2015, inclusive.

1.6 "Defendants" means defendants William E. Chapman, II, Lucinda Franks, Edward J. Kaier, Patrick Reinkemeyer, Eric P. Rakowski, Martin Shubik, Charles C. Walden, Martin J. Whitman, David M. Barse, Vincent J. Dugan, Jack W. Aber, Marvin Moser, the Trust, the Advisor, AMG and MJW. Defendants Jack W. Aber and Marvin Moser are deceased.

1.7 "Effective Date" means the date upon which the Settlement contemplated by this Stipulation shall become effective, as set forth in ¶ 10.1.

1.8 "Escrow Agent" means Robbins Geller Rudman & Dowd LLP or its successor(s).

1.9 "Final" with respect to the Final Order and Judgment approving this Settlement or any other court order means: (a) if no appeal from the Final Order and Judgment is taken, the date on which the time for taking such appeal expires; or (b) if any appeal is taken, the date on which all appeals, including petitions for rehearing or reargument, and any related appeals or petitions (including as to any appeal bond), have been finally disposed of (whether through expiration of time to file, denial of any request for review, affirmance on the merits, or otherwise) in a manner that does not result in any material alteration of the Final Order and Judgment. A court's ruling or failure to rule on (i) any application for attorneys' fees and expenses, or any modification or reversal of any award of attorneys' fees and expenses or (ii) any plan of allocation, or any reversal, vacation, or modification thereof, shall not preclude the Final Order and Judgment from becoming Final.

1.10 "Final Order" means the Order Approving Class Action Settlement, substantially in the form attached hereto as Exhibit B.

1.11 "Independent Trustees" means William E. Chapman, II, Lucinda Franks, Edward J. Kaier, Patrick Reinkemeyer, Eric P. Rakowski, Martin Shubik, Charles C. Walden, Jack W. Aber, and Marvin Moser.

1.12 "Individual Defendants" means William E. Chapman, II, Lucinda Franks, Edward J. Kaier, Patrick Reinkemeyer, Eric P. Rakowski, Martin Shubik, Charles C. Walden, Martin J. Whitman, David M. Barse, Vincent J. Dugan, Jack W. Aber and Marvin Moser.

1.13 "Judgment" means the judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit C.

1.14 "Lead Counsel" means Robbins Geller Rudman & Dowd LLP or its successor(s).

1.15 "Lead Plaintiff" means IBEW 58.

1.16 "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, which is to be sent to all Class Members, substantially in the form attached hereto as Exhibit A-1, or as modified pursuant to agreement of the Settling Parties or order of the Court.

1.17 "Notice Program" means the program for informing potential Class Members about the proposed Settlement, including the Notice, the Summary Notice, and the manner of delivering and publishing such notices.

1.18 "Person" means any individual, corporation, limited liability company, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their respective spouses, agents, heirs, predecessors, successors, personal representatives, representatives, or assigns.

1.19 "Plaintiffs" means IBEW 58 and Anthony Dallacasa.

1.20 "Plaintiffs' Counsel" means any counsel who have appeared on behalf of any plaintiff in the Action.

1.21 "Preliminary Approval Order" means the proposed order to be entered by the Court preliminarily approving the Settlement and directing notice thereof to the Class, substantially in the form of Exhibit A attached hereto.

1.22 "Proof of Claim" means the proposed Proof of Claim and Release form to be submitted by Class Members, substantially in the form attached hereto as Exhibit A-2.

1.23 "Released Claims" means all of the Released Plaintiffs' Claims and all of the Released Defendants' Claims (as defined herein).

1.24 "Released Defendants' Claims" is defined in ¶ 11.3.

1.25 "Released Persons" is defined in ¶ 11.1.

1.26 "Released Plaintiffs' Claims" is defined in ¶ 11.2.

1.27 "Releasing Plaintiffs" is defined in ¶ 11.2.

1.28 "Settlement" means the settlement embodied by this Stipulation.

1.29 "Settlement Hearing" means the final hearing to be held by the Court to determine whether to approve the Settlement of the Action as set forth herein.

1.30 "Summary Notice" means the Summary Notice to be published in *The Wall Street Journal*, and over the *Business Wire* or *PR Newswire*, substantially in the form attached hereto as Exhibit A-3, or as modified pursuant to agreement of the Settling Parties or order of the Court.

1.31 "Unknown Claims" means any Released Plaintiffs' Claim that the Lead Plaintiff or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons, which, if known by him, her or it, would or might have affected his, her or its settlement with and release of the Released Persons, or would or might have affected his, her or

its decision not to object to this Settlement; and any Released Defendants' Claim that any Defendant does not know or suspect to exist in his, her or its favor at the time of the release, which, if known by him, her or it, would or might have affected his, her or its decision(s) with respect to the Settlement. Plaintiffs or the Class Members may hereafter discover facts in addition to or different from those that he, she or it now knows or believes to be true with respect to the subject matter of the Released Plaintiffs' Claims, but, upon the Effective Date, Plaintiffs and the Class Members shall have expressly waived and shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever waived, relinquished, settled and released any and all Released Plaintiffs' Claims (including Unknown Claims), known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Likewise, Defendants may hereafter discover facts in addition to or different from those that he, she or it now knows or believes to be true with respect to the subject matter of the Released Defendants' Claims, but, upon the Effective Date, Defendants shall have expressly waived and shall be deemed to have, and by operation of the Final Order and Judgment shall have fully, finally, and forever waived, relinquished, settled and released any and all Released Defendants' Claims (including Unknown Claims), known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs and Defendants acknowledge,

and the Class Members by operation of law shall be deemed by operation of the Final Order and Judgment to have acknowledged, that the inclusion of Unknown Claims in the definition of Released Claims, Released Defendants' Claims and Released Plaintiffs' Claims was separately bargained for and is a key element of the Settlement, of which this release is a material and essential part, and expressly waive the benefits of (a) the provisions of §1542 of the California Civil Code, which provides that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR,

and (b) any and all provisions or rights conferred by any law of any state or territory of the United States, or principle of common law, that is similar, comparable or equivalent to California Civil Code §1542.

**2. Scope and Effect of Settlement**

2.1 The satisfaction of the obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action and any and all Released Claims as against all Released Persons.

2.2 Upon the Effective Date, the Releasing Plaintiffs shall, with respect to each and every Released Plaintiffs' Claim, release and fully, finally, and forever discharge, and shall forever be enjoined from prosecuting, any Released Plaintiffs' Claim against any of the Released Persons.

2.3 Upon the Effective Date, each of the Defendants, on behalf of themselves and their heirs, successors, and assigns, shall release and fully, finally, and forever discharge each and every Released Defendants' Claims, and shall be forever enjoined from prosecuting, any Released Defendants' Claims.

**3. The Settlement Consideration**

**a. The Settlement Fund**

3.1 In full settlement of the Released Plaintiffs' Claims, within ten (10) business days after the Court enters the Preliminary Approval Order, the Fund shall cause to be paid the sum of Fourteen Million Two Hundred and Fifty Thousand Dollars ($14,250,000) (the "Settlement Amount") into a separate interest-bearing escrow account maintained by the Escrow Agent, on behalf of Lead Plaintiff and the Class. The sum in the interest-bearing escrow account, from which any Taxes (as defined below) and other expenses and costs as described below shall be paid, shall be the "Settlement Fund."

3.2 The Settlement Fund shall be applied as follows:

(a) to pay the Notice and Administration Costs as referred to in ¶5.3;

(b) to pay the attorneys' fee and expense award referred to in ¶¶6.1-6.4;

(c) to pay the Taxes and Tax Expenses described in ¶3.7; and

(d) to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as provided in ¶¶7.1-7.5.

3.3 Other than cooperating as necessary with respect to the "relation-back election" as set out in ¶3.7, the Released Persons shall have no responsibility for or liability relating to maintaining or investing the Settlement Amount or the Settlement Fund, the establishment or maintenance of the escrow account, the payment of Taxes or Tax Expenses, or the distribution of the Settlement Fund or the Net Settlement Fund (as defined below), or the administration of the Settlement. The Released Persons take no position with respect to the provisions of this Stipulation governing those issues except as otherwise expressly provided in this Stipulation. The Released Persons shall have no

further or other liability or obligations to Plaintiffs, Plaintiffs' Counsel, or any member of the Class with respect to the Released Claims except as expressly stated in this Stipulation.

**b. The Escrow Agent**

3.4 The Escrow Agent shall invest any funds in the Settlement Fund in excess of One Hundred Thousand Dollars ($100,000) in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government, or any agency thereof, and shall reinvest the proceeds of those instruments as they mature in similar instruments at their then-current market rates. Any funds held by the Escrow Agent in escrow hereunder in an amount of less than One Hundred Thousand Dollars ($100,000) shall be held in an interest-bearing bank account insured by the FDIC. The Escrow Agent shall bear all risks related to investment of the Settlement Fund and shall indemnify the Released Persons and hold them harmless from and against any losses related to investment of the Settlement Fund.

3.5 All funds held by the Escrow Agent shall be deemed and considered to be in the custody of the Court, and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed or returned to the Person(s) paying the same pursuant to this Stipulation and/or further order(s) of the Court.

3.6 The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of counsel for Defendants and Plaintiffs' Counsel.

**c. Taxes and Tax Expenses**

3.7 (a) The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treasury Reg. §1.468B-2(k)(1). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to

carry out the provision of this ¶3.7, including the "relation-back election" (as defined in Treasury Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b) For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file, or cause to be timely and properly filed, all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶3.7(a)) shall be consistent with this ¶3.7 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶3.7(c).

(c) All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriment that may be imposed upon the Released Persons with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund and operation and implementation of this ¶3.7 (including, without limitation, expenses of tax attorneys and/or accountants) and mailing and distribution costs and expenses related to filing (or failing to file) the returns described in this ¶3.7 ("Tax Expenses") shall be paid out of the Settlement Fund. Defendants and their corresponding Released Persons shall have no liability or responsibility for the payment of any Taxes or Tax

Expenses. The Escrow Agent shall indemnify and hold each of the Defendants and the Released Persons harmless for any Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund, and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Reg. §1.468B-2(l)(2)); neither Defendants nor the Released Persons are responsible nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent necessary to carry out the provisions of this ¶3.7.

**d. Termination of Settlement**

3.8 In the event that the Stipulation is not approved, or is properly terminated, cancelled, or fails to become effective for any reason (including in the event the settlement of the Delaware Derivative Action is not approved by the Delaware Court or the settlement of the Delaware Derivative Action does not become Final, as set forth in ¶10.1(f)), the Settling Parties shall be deemed to have reverted to their respective status in the Action as of the execution of this Stipulation, and they shall promptly agree on a new scheduling order to govern further proceedings in the Action. In such event, the terms and provisions of this Stipulation, with the exception of ¶¶3.4-3.8 and 12.1, shall be null and void and have no further force and effect with respect to the Settling Parties and neither this Stipulation nor any submission by any of the Settling Parties in connection with the motion(s) for preliminary or final approval of the Settlement or a Fee and

Expense Application, as defined below, or appeal therefrom or any related motions or proceedings may be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*. In the event that the Stipulation is not approved, or is terminated, cancelled, or fails to become effective, then within ten (10) business days after such non-approval, termination, cancellation or failure, the Settlement Fund less any amounts paid or incurred for Notice and Administration Costs (defined below), including any Taxes or Tax Expenses, shall be refunded directly to the Fund pursuant to written instructions from the Fund's counsel. No order of the Court or modification or reversal on appeal of any order of the Court concerning any plan of allocation or the amount of any attorneys' fee and expense award approved by the Court shall constitute grounds for cancellation or termination of the Stipulation.

**4. Preliminary Court Approval, Notice to Class Members, and Settlement Hearing**

4.1 As soon as practicable following execution of the Stipulation, Lead Plaintiff shall submit the Stipulation, together with its Exhibits, to the Court and shall apply for entry of a Preliminary Approval Order, substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, certification of the Class solely for settlement purposes, and approval for the mailing of the Notice and the Proof of Claim and publication of the Summary Notice, substantially in the forms of Exhibits A-1, A-2, and A-3 attached hereto.

4.2 Lead Plaintiff shall request that, after the Notice and the Proof of Claim are mailed and the Summary Notice is published, the Court hold a hearing (the "Settlement Hearing") to consider and determine whether to approve the Settlement as fair, reasonable, and adequate, and whether the Final Order, substantially in the form of Exhibit B attached hereto, should be entered

approving the Settlement as set forth herein and dismissing the Action with prejudice. At or after the Settlement Hearing, Lead Counsel will also request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application, as defined below.

**5. Administration of the Settlement Fund**

5.1 The Claims Administrator shall administer the Settlement subject to the jurisdiction of the Court. The Claims Administrator, subject to such supervision and direction of Lead Counsel and/or the Court as may be necessary or as circumstances require, shall administer the Settlement, including providing notice to the Class, administering and calculating the claims submitted by Class Members, and overseeing distribution of the Net Settlement Fund to Authorized Claimants.

5.2 Defendants, through their counsel, shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms, including providing without charge to Lead Counsel or the Claims Administrator all information from the Fund's transfer records and from the Fund's transfer agent concerning the identity of potential Class Members within five (5) business days following the execution of this Stipulation. In addition, Defendants will administer and pay for any costs or expenses incurred in connection with providing Notice pursuant to the Class Action Fairness Act ("CAFA"). Except for their obligations to pay the Settlement Amount or to cause it to be paid, to cooperate in the production of information with respect to the identification of potential Class Members from the Fund's shareholder transfer records, and to administer and pay the costs and expenses of CAFA notice, the Released Persons shall have no responsibility for the administration of the Settlement and shall have no liability to the Class or Class Members or anyone else in connection with such administration.

5.3 All reasonable costs and expenses of notice to Class Members, administration of the Settlement Fund, escrow fees, Taxes, Tax Expenses, custodial fees, and expenses incurred in

connection with processing Proofs of Claim and distributing the Settlement Fund (the "Notice and Administration Costs") shall be paid from the Settlement Fund. Prior to the Effective Date, a sum not to exceed Two Hundred Thousand Dollars ($200,000) from the Settlement Fund may be paid for the express purpose of paying Notice and Administration Costs without further approval of Defendants or the Court. Upon the Effective Date, Lead Counsel, without further approval of Defendants or the Court, may pay from the Settlement Fund any Notice and Administration Costs.

**6. Plaintiffs' Counsel's Fees and Expenses**

6.1 Lead Counsel will apply to the Court for an award from the Settlement Fund of attorneys' fees and expenses in connection with prosecuting the Action plus interest on such attorneys' fees and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) in an amount to be approved by the Court (the "Fee and Expense Application"). Defendants shall take no position with respect to the Fee and Expense Application, but if the award is less than the amount sought by Lead Counsel, this will not be a basis for setting aside the Settlement. Such attorneys' fees and expenses, as are awarded by the Court, shall be paid from the Settlement Fund to Lead Counsel immediately upon award by the Court, notwithstanding any objection, appeal or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund plus accrued interest at the same net rate as is earned by the Settlement Fund, as provided in ¶ 6.2 if and when any of the events in ¶ 6.2 occur. Lead Counsel shall allocate the attorneys' fees amongst Plaintiffs' Counsel in a manner that it, in good faith, believes reflects the contribution of such counsel to the prosecution and settlement of the Action. No Released Person has discussed with any of the Plaintiffs or any Plaintiffs' Counsel the amount that Lead Counsel may seek.

6.2 In the event that the Effective Date does not occur, or the Final Order and Judgment or the order approving the Fee and Expense Application is reversed, vacated, or modified, or the Stipulation is terminated or cancelled for any reason, and in the event that any attorneys' fees, expenses, and costs have been paid to any extent, Plaintiffs' Counsel who received such fees, expenses, and costs shall, within ten (10) business days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, have an obligation to refund to the Settlement Fund the fees, expenses, and costs previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal, vacation, or modification. Each law firm, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are liable for any refund required by this ¶6.2, and are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

6.3 The allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees, expenses, and costs to be paid out of the Settlement Fund is not part of the Settlement set forth in this Stipulation, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal, vacation, or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Final Order and Judgment approving the Stipulation and the Settlement set forth herein.

6.4 Except as set forth in ¶5.2, the Released Persons shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and expenses to Plaintiffs' Counsel or any other attorney representing any Class Member over and above payment from the

Settlement Fund. The Released Persons shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' Counsel, and/or any other Person who may assert some claim to any award of attorneys' fees and expenses that the Court may make in the Action.

**7. Distribution to Authorized Claimants**

7.1 The Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with the Plan of Allocation to be described in the Notice and approved by the Court. Regardless of whether the Court has issued a Final Order and Judgment or has otherwise approved the Settlement, no disbursements shall be made from the Settlement Fund for purposes of processing Class Members' claims unless and until the Delaware Court approves the settlement of the Delaware Derivative Action and that settlement becomes Final; *provided, however,* that the foregoing restriction on disbursements from the Settlement fund shall not apply to disbursements made for Notice and Administration Costs as otherwise provided in this Stipulation.

7.2 The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's recognized claim (as defined in the Plan of Allocation described in the Notice attached hereto as Exhibit A-1, or in such other Plan of Allocation as the Court approves).

7.3 The Plan of Allocation proposed in the Notice, including any adjustments to an Authorized Claimant's claim, is not a necessary term of this Stipulation, is not a condition for approval of the Settlement, and is to be considered separately from the Court's consideration of the Settlement's fairness, reasonableness, and adequacy. Any order or proceeding relating to the Plan of Allocation, or any appeal from any order or proceeding relating to the Plan of Allocation or reversal, vacation, or modification thereof, shall not operate to terminate or cancel the Stipulation or affect or

delay the finality of the Final Order and Judgment approving the Stipulation and the Settlement set forth herein.

7.4 Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its recognized claim compared to the total recognized claims of all Authorized Claimants. Released Persons shall have no involvement in reviewing, calculating, or challenging claims. Released Persons and Released Persons' counsel take no position with respect to, and have no responsibility for, the Plan of Allocation or, if approved by the Court, its implementation.

7.5 Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator as the circumstances may require. Lead Counsel and/or the Claims Administrator shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any submitted Proofs of Claim in the interests of achieving substantial justice.

7.6 For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an "Authorized Claimant," the following conditions shall apply:

(a) Each Class Member shall be required to submit a Proof of Claim (substantially in the form of Exhibit A-2 attached hereto), supported by such documents as are designated therein, including proof of the Class Member's loss, or such other documents or proof as Lead Counsel and/or the Claims Administrator may deem acceptable;

(b) All Proofs of Claim must be submitted by the date specified in the Notice unless such period is extended by order of the Court. Any Class Member who fails to submit a Proof of Claim by such date shall be forever barred from receiving any payment pursuant to this Stipulation (unless, by order of the Court, a later submitted Proof of Claim by such Class Member is

approved), and shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Final Order and Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Persons concerning the Released Claims. Notwithstanding the foregoing, Lead Counsel may instruct the Claims Administrator to accept late-filed claims if distribution of the Net Settlement Fund is not materially delayed thereby. No Person shall have any claim against Plaintiffs, Lead Counsel, Plaintiffs' Counsel, or the Claims Administrator by reason of the decision to exercise discretion whether to accept late submitted claims. A Proof of Claim shall be deemed to have been submitted when completed on-line via the case specific website or if received with a postmark indicated on the envelope and if mailed by First-Class Mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

(c) Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under such supervision of Lead Counsel, as may be necessary or the circumstances may require, and the Claims Administrator shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d) Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the Class Member in order to remedy any curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under such supervision of Lead Counsel, as may be necessary or the circumstances may require, shall notify, in a timely fashion and in writing, all Class Members whose Proofs of Claim it proposes to reject in whole or in part, setting forth the reasons therefore, and shall

indicate in such notice that the Class Member whose claim is to be rejected has the right to a review by the Court if the Class Member so desires and complies with the requirements of subparagraph (e) below; and

(e) If any Class Member whose claim has been rejected in whole or in part desires to contest such rejection, the Class Member must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Class Member's grounds for contesting the rejection, along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court. All claimants and Settling Parties expressly waive trial by court or jury (to the extent any such right might exist) and any right of appeal or review as to the Court's determination concerning any Proof of Claim. Any claimant pursuing a dispute shall be responsible for his, her, or its own costs, including attorneys' fees, incurred in pursuing the dispute.

7.7 Each Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to the Class Member's claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Class Member's status as a Class Member and the validity and amount of the Class Member's claim. No other discovery shall be allowed in connection with processing of the Proofs of Claim.

7.8 Payment of claims pursuant to this Stipulation shall be deemed final and conclusive against all Class Members. All Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Final Order and

Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Persons concerning the Released Claims.

7.9 All proceedings with respect to the administration, processing, and determination of claims described by ¶¶7.1-7.14 and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

7.10 The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the Effective Date and after: (i) all timely and valid claims have been processed, and all Class Members whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; and (ii) all objections with respect to all rejected or disallowed claims have been resolved by the Court, and all appeals therefrom have been resolved or the time therefore has expired.

7.11 If any funds remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (a) first, to pay any additional settlement administration fees and expenses; (b) second, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants or to pay any late, but otherwise valid and fully documented claims received after the cut-off date used to make the initial distribution, provided that such distributions to any late post-distribution claimants meet all of the other criteria for inclusion in the initial distribution; and (c) to make a second distribution to Authorized Claimants who cashed their

checks from the initial distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. These redistributions will be repeated until the balance remaining in the Net Settlement Fund is no longer economically feasible to distribute to Class Members. Thereafter, any funds that remain in the Net Settlement Fund shall be contributed to an Internal Revenue Code Section 501(c)(3) charity designated by Lead Counsel and unaffiliated with Defendants, Lead Plaintiff, or Lead Counsel.

7.12 This is not a claims-made settlement, and, if all the conditions of the Stipulation are satisfied and the Effective Date occurs, no portion of the Settlement Fund will be returned to such Persons that paid the Settlement Amount.

7.13 The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith.

7.14 No Person shall have any claim against Lead Plaintiff, Plaintiffs' Counsel, the Released Persons, or their respective counsel based on the administration of the Settlement, including, without limitation, the processing of claims and distributions made in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation or further order(s) of the Court.

**8. Terms of the Final Order and Judgment**

8.1 If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel shall request that the Court enter the Final Order and Judgment, substantially in the forms

attached hereto as Exhibits B and C, respectively. The Final Order will include a PSLRA bar order, a complete bar order and a permanent injunction.

**9. Termination of Settlement and Supplemental Agreement**

9.1 Simultaneously herewith, Lead Plaintiff and Defendants are executing a confidential "Supplemental Agreement" setting forth certain conditions under which this Stipulation may be withdrawn or terminated at the sole discretion of Defendants if potential Class Members who meet certain criteria exclude themselves from the Class. Pursuant to the Supplemental Agreement, Defendants have the option (which must be exercised unanimously) to terminate the Settlement in the event that an aggregate number of shares of the Fund purchased during the Class Period by Class Members who would otherwise be entitled to participate as members of the Class, but who timely and validly request exclusion, equals or exceeds the specified percentage of the total number of shares issued by the Fund purchased during the Class Period, or the specified percentage of the alleged damages claimed by the Class, as set forth in the Supplemental Agreement.

9.2 The Supplemental Agreement shall not be filed with the Court unless and until the Court asks the Settling Parties to do so or a dispute arises between Lead Plaintiff and Defendants concerning its interpretation or application. In either of those events, the Settling Parties will use their best reasonable efforts to submit the Supplemental Agreement to the Court for its *in camera* review or file the Supplemental Agreement under seal. In the event of an objection to the Settlement based upon the confidentiality of the percentages stated in the Supplemental Agreement, and notwithstanding anything to the contrary in this Paragraph or the Supplemental Agreement, Lead Plaintiff and Defendants (by a unanimous determination) each shall have the option to waive confidentiality, upon three (3) business days notice communicated by facsimile or e-mail addressed to Lead Counsel or Defendants' counsel, as appropriate.

9.3 In the event that Defendants elect to terminate the Stipulation in accordance with ¶9.1 and such withdrawal is not nullified in accordance with the terms of the Supplemental Agreement, the Stipulation shall be withdrawn and terminated and deemed null and void, and the provisions of ¶3.8 shall apply.

**10. Effective Date of Settlement, Waiver, or Termination**

10.1 The Effective Date of the Settlement shall be one business day following the latest of the following events:

(a) entry by the Court of the Preliminary Approval Order in all material respects in the form attached hereto as Exhibit A;

(b) payment of the Settlement Amount to the escrow account;

(c) expiration of the time for Defendants to exercise their option to terminate the Stipulation in accordance with the terms of the Supplemental Agreement described in ¶9.1, without the exercise of that option;

(d) entry by the Court of a Final Order and Judgment, in all material respects in the forms set forth in Exhibits B and C hereto;

(e) expiration of the time for Defendants or Plaintiffs to exercise their right to terminate the Stipulation pursuant to ¶10.4;

(f) the Final Order and Judgment become Final; and

(g) entry by the Delaware Court of an order approving the settlement of the Delaware Derivative Action, and such approval becomes Final.

10.2 If all the conditions specified above in ¶10.1 are not met, then this Stipulation shall be cancelled and terminated unless Plaintiffs and Defendants, by and through their counsel, agree in writing to proceed with this Stipulation.

10.3 Upon the occurrence of all of the events referenced in ¶ 10.1, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be extinguished.

10.4 Each Defendant or Plaintiff shall have the right to terminate the Settlement and this Stipulation by providing written notice of its, his, or her election to do so ("Termination Notice"), through counsel, to all other Settling Parties within thirty (30) calendar days after: (a) the Court's refusal to enter the Preliminary Approval Order, substantially in the form attached here as Exhibit A in any material respect; (b) the Court's refusal to issue an order approving this Stipulation or any material part of it; (c) the Court's refusal to enter the Final Order and Judgment without material alteration or, in the event of material alteration, without each Party's consent to such alteration in writing in its, his or, her sole discretion; (d) the date upon which an order vacating, modifying, revising or reversing the Final Order and Judgment becomes Final; or (e) the refusal of the Delaware Court to issue an order approving the settlement of the Delaware Derivative Action, or the failure of the settlement of the Delaware Derivative Action to become Final. Lead Counsel, on behalf of Plaintiffs, shall also have the right to terminate the Settlement thirty (30) calendar days after Defendants' failure to timely pay the Settlement Amount.

10.5 In the event that the Settlement is terminated or fails to become effective in accordance with its terms for any reason, then the terms of ¶3.8 shall apply.

**11. The Releases**

11.1 Upon the Effective Date, the following persons (the "Released Persons"), whether or not each or all of the following Persons were named, served with process, or appeared in the Action, will be fully and finally released and discharged with respect to the Released Plaintiffs' Claims (as defined below): (a) Defendants and the Fund; (b) for each and all of the Persons identified in the foregoing clause of this ¶11.1, any and all of their respective past or present trusts, foundations,

investors, insurers, reinsurers, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited-liability companies, corporations, parents, controlling persons, subsidiaries, divisions, direct or indirect affiliates, associated entities, stockholders, members, managing members, managing agents, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys in fact, counsel, accountants and associates that are not natural persons; (c) for each and all of the Persons identified in the foregoing clauses of this ¶11.1 that are not natural persons, any and all of their respective past or present trustees, agents, employees, fiduciaries, partners, controlling persons, principals, officers, managers, directors, managing directors, members, managing members, managing agents, financial or investment advisors, advisors, consultants, brokers, dealers, lenders, attorneys in fact, counsel, accountants, and associates who are natural persons; (d) for each and all of the Persons identified in the foregoing clauses of this ¶11.1 that are not natural persons, their respective successors and assigns; and (e) for each and all of the Persons identified in the foregoing clauses of this ¶11.1 who are natural persons, any and all of their past or present family members or spouses, and the heirs, executors, estates, administrators, personal or legal representatives, assigns, beneficiaries, and distributees of any of the foregoing.

11.2 Upon the Effective Date, the following claims (the "Released Plaintiffs' Claims") will be released with respect to the Released Persons: all actions, claims, debts, demands, causes of action and rights and liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert, or consulting fees and any other costs, expenses, or liability whatsoever), against Defendants and the Released Persons, belonging to Plaintiffs and/or any or all Class Members or any Person acting on their behalf, including their present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates,

employers, employees, agents, insurers, reinsurers, directors, managing directors, officers, partners, principals, members, managing members, attorneys, financial and other advisors, investment bankers, underwriters, lenders, and any other representatives of any of these persons and entities (the "Releasing Plaintiffs"), whether direct, derivative, representative or in any other capacity, arising under federal, state, local or foreign, statutory or common law or any other law, rule or regulation, concerning both known claims and Unknown Claims, that: (a) have been asserted in the Action (including all claims alleged in any complaint filed in the Action or in any action consolidated into it) against any of the Released Persons; or (b) could have been or could be asserted in any forum by or on behalf of the Class Members or any of them against any of the Released Persons, if such claims or Unknown Claims (i) relate to the allegations, transactions, facts, matters, breaches, occurrences, financial statements, statements, representations or omissions involved, set forth, or referred to in the Action and (ii) relate to the purchase of Fund shares during the Class Period (including any decision to hold or retain such Fund shares).

11.3 Upon the Effective Date, the following claims (the "Released Defendants' Claims") will be released with respect to Plaintiffs, Lead Counsel, any other counsel for Plaintiffs in the Action, and all members of the Class and their counsel: any and all actions, claims, debts, demands, causes of action and rights and liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liability whatsoever), whether based on federal, state, local, or foreign statutory, or common law or any other law, rule, or regulation, concerning both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by Defendants, or the heirs, successors, and assigns of any of them against Plaintiffs, Lead Counsel, any of the Class Members or their attorneys, arising out of or relating to the institution, prosecution, or settlement of the Action.

11.4 Notwithstanding anything to the contrary above, the Released Claims do not include claims (a) to enforce the Final Order and Judgment and the Settlement, and any or all of their terms, including, but not limited to, the releases provided for in the Final Order and Judgment, (b) for breach or violation of any of the terms of this Stipulation or the orders or judgments issued by the Court in connection with the Settlement, (c) any claims in the Delaware Derivative Action, or (d) belonging to Defendants against their insurers or any other person not a party hereto. Lead Plaintiff and Plaintiffs' Counsel will take no position regarding indemnification payments or insurance among Defendants, and the Settlement is not contingent upon the receipt of such indemnification agreements.

11.5 Notwithstanding anything in the complete bar order or anything else in the Stipulation, nothing shall release, interfere with, limit, or bar the assertion by any Released Person of (a) any claim or right for insurance coverage under any insurance, reinsurance, or indemnity policy, (b) any statutory, by-law, trust instrument, or contractual right or claim to indemnification or advancement as against any other Released Person, or (c) any statutory, by-law, trust instrument, common-law, or contractual right or claim as against any other Released Person concerning matters other than indemnification, contribution, or advancement.

**12. No Admission of Wrongdoing**

12.1 Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated, the fact and terms of this Stipulation, including Exhibits, all negotiations, discussions, drafts, and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement, shall not, in this or any other court, administrative agency, arbitration forum, or other tribunal, constitute an admission of, or evidence of, or be deemed to create any inference of, (a) any acts of wrongdoing or lack of wrongdoing; (b)

any liability on the part of any of Released Persons to Plaintiffs, the Class, or anyone else; (c) any damages, or lack of damages, suffered by Plaintiffs, the Class, or anyone else; or (d) that the Settlement Amount (or any other amount) represents the amount that could or would have been recovered from Defendants in the Action if the Action was not settled at this point in time.

12.2 The fact and terms of this Stipulation, including Exhibits, all negotiations, discussions, drafts, and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement, shall not be offered or received in evidence or used for any other purpose in this or any other proceeding in any court, administrative agency, arbitration forum, or other tribunal, except as necessary to enforce the terms of the Settlement, including, but not limited to, the Preliminary Approval Order, the Notice, the Final Order and Judgment, and the releases provided for in the Final Order and Judgment. Defendants and any Released Persons may file the Stipulation, the Preliminary Approval Order, the Notice, the Final Order, and the Judgment in any other action or proceeding that may be brought against them in any forum in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release and discharge, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. Plaintiffs understand, acknowledge, and agree that Defendants have denied and continue to deny all claims of wrongdoing, liability, and damages alleged in the Action.

**13. Miscellaneous Provisions**

13.1 All of the Exhibits attached to this Stipulation are material and integral parts hereof, and are hereby incorporated by reference as though fully set forth herein.

13.2 The Settling Parties: (a) acknowledge that it is their intent to consummate this Settlement; (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all

terms and conditions of this Stipulation; and (c) agree to exercise their good-faith efforts to accomplish the foregoing terms and conditions of this Stipulation (except that none of the Released Persons needs to make any payment to the Class Members in addition to the Settlement Amount).

13.3 The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated at arm's length in good faith by the Settling Parties, and reflect a Settlement that was reached voluntarily after consultation with experienced legal counsel. Lead Plaintiff, on behalf of itself and the Class, and Defendants, agree not to assert in any forum that the Action was brought or defended in bad faith or without a reasonable basis. The Settling Parties shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action, and the Final Order shall contain a provision that during the course of the Action, the Settling Parties and their respective counsel at all times hereto complied with and satisfied the requirements of Rule 11.

13.4 All agreements made and orders entered during the course of this Action relating to the confidentiality of documents and information shall survive this Stipulation pursuant to their terms.

13.5 This Stipulation may not be amended, changed, waived, discharged, or terminated (except as explicitly provided herein), in whole or in part, except by an instrument in writing signed by the Settling Parties to this Stipulation. The waiver by one Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

13.6 The headings and captions in this Stipulation are used for the purpose of convenience only and are not meant to have any legal effect on the meaning or interpretation of this Stipulation or any of its terms or provisions.

13.7 The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court and the Court shall retain continuing and exclusive jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation and for the purpose of entering orders providing for awards of attorneys' fees and expenses to Plaintiffs' Counsel.

13.8 This Stipulation, the Exhibits attached hereto, and the Supplemental Agreement constitute the entire agreement among the Settling Parties concerning the Settlement of the Action, and no representations, warranties, or inducements have been made by any Settling Party concerning this Stipulation and its Exhibits and the Supplemental Agreement other than those contained and memorialized in such documents. Except as provided herein, each Settling Party shall bear its own costs.

13.9 This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

13.10 This Stipulation shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Settling Parties.

13.11 The construction, interpretation, operation, effect, and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the laws of New York without regard to any choice-of-law principle, except to the extent that federal law requires that federal law governs.

13.12 This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and that all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

13.13 All counsel and any other Person executing this Stipulation and any of the Exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

13.14 Lead Counsel and Defendants' counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order, the Stipulation, and the Settlement, and to agree upon and execute all such other documentation promptly as may be reasonably required to obtain Final approval by the Court of the Settlement to the extent consistent with the terms of the Stipulation.

13.15 The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation without further notice to the Class.

13.16 The Settling Parties agree that once public disclosure is made by Defendants, other than disclosures Defendants and Lead Plaintiff have been advised are required by law or this Stipulation, including notice to the Class, all papers necessary to seek preliminary and final approval of the Settlement, approval of the Plan of Allocation and the Fee and Expense Application, any press releases or other statements that might become available to the public by any of the Settling Parties regarding the Action or the Settlement will not substantially deviate from words to the effect that the Settling Parties have reached a mutually acceptable resolution by way of a mediated settlement and that the Settling Parties are satisfied with this resolution.

13.17 Whenever this Stipulation requires or contemplates that a Settling Party shall or may give notice to any other Settling Party, notice shall be provided by facsimile, e-mail, and/or next-day (excluding Saturday, Sunday, and legal holidays) express-delivery service as follows and shall be

deemed effective upon such facsimile or e-mail transmission or delivery to the facsimile number, e-mail address, or street address, as the case may be, below:

If to Defendants Third Avenue Trust, William E. Chapman, II, Lucinda Franks, Edward J. Kaier, Eric P. Rakowski, Martin Shubik, Charles C. Walden, and Patrick Reinkemeyer, then to:

Robert A. Skinner
Amy D. Roy
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7560
Fax: (617) 951-7050
robert.skinner@ropesgray.com
amy.roy@ropesgray.com

Lee S. Gayer
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 841-0626
Fax: (212) 596-9090
lee.gayer@ropesgray.com

If to Defendants M.J. Whitman LLC, Third Avenue Management, LLC Vincent J. Dugan, and Affiliated Managers Group, Inc., then to:

John P. Coffey
Jonathan M. Wagner
Samantha V. Ettari
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas,
NEW YORK, NY 10036
TEL: (212) 715-9393
Fax: (212) 715-8000
scoffey@kramerlevin.com
jwagner@kramerlevin.com
settari@kramerlevin.com

If to Defendant Martin J. Whitman, then to:

Arnold S. Jacobs
Alexandra K. Skellet
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900
ajacobs@proskauer.com
askellet@proskauer.com

If to Defendant David M. Barse, then to:

Scott A. Edelman
Robert C. Hora
Rachel P. Fissell
MILBANK, TWEED, HADLEY & MCCOY LLP
28 Liberty Street
New York, NY 10005-1413
Tel: (212) 530-5000
Fax: (212) 530-5219
sedelman@milbank.com
rhora@milbank.com
rfissell@milbank.com

If to Plaintiffs, then to:

Samuel H. Rudman
Evan J. Kaufman
ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Road, Suite 200
Melville, NY 11747
Tel: 631/367-7100
Fax: 631/367-1173
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com

13.18 All Released Persons who are not Defendants or Plaintiffs are intended third-party beneficiaries who are entitled to only enforce the terms of the release provisions set forth in this Stipulation, but the consent of such third-party beneficiaries shall not be required to amend, modify, or terminate this Stipulation.

IN WITNESS WHEREOF, the Settling Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated March 31, 2017.

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
EVAN J. KAUFMAN
ANDREW L. SCHWARTZ

s/ Evan J. Kaufman

EVAN J. KAUFMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
aschwartz@rgrdlaw.com

Lead Counsel for Plaintiffs

SACHS WALDMAN, P.C.
JOSEPH PAWLICK

s/ Joseph Pawlick

JOSEPH PAWLICK

1423 East Twelve Mile Road
Madison Heights, MI 48071
Telephone: 248/658-0800
248/658-0801 (fax)

Additional Counsel for Lead Plaintiff

ROPES & GRAY LLP
ROBERT A. SKINNER
AMY D. ROY

s/ Robert A. Skinner
ROBERT A. SKINNER

Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone: 617/951-7560
617/951-7050 (fax)

ROPES & GRAY LLP
LEE S. GAYER
1211 Avenue of the Americas
New York, NY 10036
Telephone: 212/841-0626
212/596-9090 (fax)

Attorneys for Defendants Third Avenue Trust, William E. Chapman, II, Lucinda Franks, Edward J. Kaier, Eric P. Rakowski, Martin Shubik, Charles C. Walden, and Patrick Reinkemeyer

KRAMER LEVIN NAFTALIS & FRANKEL LLP
JOHN P. COFFEY
JONATHAN M. WAGNER
SAMANTHA V. ETTARI

s/ John P. Coffey
JOHN P. COFFEY

1177 Avenue of the Americas,
New York, NY 10036
Telephone: 212/715-9393
212/715-8000 (fax)

Attorneys for Defendants M.J. Whitman LLC, Third Avenue Management, LLC, Vincent J. Dugan, and Affiliated Managers Group, Inc.

PROSKAUER ROSE LLP
ARNOLD S. JACOBS
ALEXANDRA K. SKELLET

s/ Arnold S. Jacobs
ARNOLD S. JACOBS

Eleven Times Square
New York, NY 10036-8299
Telephone: 212/969-3000
212/969-2900 (fax)

Attorneys for Defendant Martin J. Whitman

MILBANK, TWEED, HADLEY & MCCOY LLP
SCOTT A. EDELMAN
ROBERT C. HORA
RACHEL P. FISSELL

s/ Scott A. Edelman
SCOTT A. EDELMAN

28 Liberty Street
New York, NY 10005-1413
Telephone: 212/530-5000
212/530-5219 (fax)

Attorneys for Defendant David M. Barse

CERTIFICATE OF SERVICE

I, Evan J. Kaufman, hereby certify that on March 31, 2017, I caused a true and correct copy of the attached:

Stipulation of Settlement

to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filings to all counsel registered to receive such notice.



*s/ Evan J. Kaufman*

EVAN J. KAUFMAN