```
     H6NVTHIC

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   IN RE: THIRD AVENUE MANAGEMENT          16 CV 2758 (PKC)
     LLC SECURITIES LITIGATION
 4                                           FAIRNESS HEARING
     ------------------------------x
 5
                                             New York, N.Y.
 6                                           June 23, 2017
                                             2:25 p.m.
 7
     Before:
 8
                    HON. P. KEVIN CASTEL,
 9
                                             District Judge
10
                         APPEARANCES
11
     ROBBINS GELLER RUDMAN & DOWD
12        Attorneys for Plaintiffs
     BY:  JEFFREY D. LIGHT
13        ANDREW L. SCHWARTZ

14   ROPES & GRAY
          Attorneys for Defendants
15   BY:  ROBERT A. SKINNER
          LEE GRAYER
16        -AND-
     KRAMER LEVIN NAFTALIS & FRANKEL
17   BY:  JOHN P. COFFEY
          -AND-
18   MILBANK TWEED HADLEY & McCLOY
     BY:  ROBERT C. HORA
19        -AND-
     PROSKAUER ROSE
20   BY:  ALEXANDRA K. SKELLET

21

22

23

24

25
```

1                (Case called)
2                THE COURT:  I have the briefing, all of the
3    submissions with regard to this proposed settlement.  Of
4    course, I know that there is an opportunity for appropriate
5    state and government officials to still weigh in, and that will
6    not expire for some time to come.  So at the end of today's
7    session, in no event would I be entering an order of approval;
8    it would be something that I would hold if I were inclined to
9    approve it.
10               But before I proceed, I want to find out whether there
11   is anything anyone orally wishes to say.
12               I have the written submissions.
13               MR. LIGHT:  Your Honor, this is Jeffrey Light on
14   behalf of the plaintiffs.
15               As we've said in our paper, we think that this is an
16   excellent settlement.  We worked hard to get to this
17   settlement.  It was negotiated with the Honorable Layn
18   Phillips, who is a very experienced mediator of these cases.
19   We think, based on the practical -- as well as legal -- issues
20   in this case, that the $14.25 million settlement is a really
21   good result for the class.
22               THE COURT:  Anyone else wish to be heard?
23               MR. SKINNER:  Your Honor, Robert Skinner.
24               Other than responding to your Honor's questions
25   yesterday regarding the CAFA notice and the details thereof --

1    and I'm happy to hand up the affidavits, your Honor.
2             THE COURT:  If you have those affidavits, can you hand
3    them up.
4             Specifically, in the conference call with all counsel
5    yesterday, I did ask for an affidavit showing that the
6    provisions of Section 1715 of Title 28 were satisfied by
7    placing the appropriate governmental officials on notice.
8             I thank you for the affidavits.
9             Anything else?
10            All right.  Plaintiffs move for certification of the
11   class for settlement purposes and for final approval of the
12   proposed class action settlement and plan of allocation.
13            Separately, lead counsel moves for an attorneys' fee
14   award in the amount of 1,425,000, or ten percent of the
15   settlement fund, plus interest and reimbursement of expenses,
16   totaling 267,350.71.
17            Lead plaintiff, IBEW Local No. 58 Sound &
18   Communications Division, and Anthony Dallacasa, have brought
19   this securities class action on behalf of all persons who
20   purchased shares of Third Avenue Focused Credit Fund between
21   March 1, 2013, and December 10, 2015.  Plaintiffs assert claims
22   against Third Avenue Trust, Third Avenue Management LLC, which
23   was the adviser, Affiliated Managers Group, AMG, M.J. Whitman
24   LLC, M.J.W., and a number of its current officers and trustees:
25   William Chapman, Lucinda Franks, Edward Kaier, Patrick

1   Reinkemeyer, Eric P. Rakowski, Martin Shubik, Charles Walden,
2   Martin Whitman, David Barse, Vincent Dugan, Jack Aber, and
3   Marvin Moser,  Messrs. Aber and Moser are, I understand,
4   deceased.
5            Plaintiffs allege that defendants made material
6   misrepresentations and omissions regarding the liquidity of the
7   funds portfolio and shareholders' ability to redeem shares.
8   This Court ordered consolidation of four actions into a single
9   class action and appointed the lead plaintiff and Robbins
10  Geller as lead counsel.  About two months later, the
11  consolidated amended complaint was filed and therefore there
12  was a motion to dismiss.
13           On March 31, 2017, after the parties had engaged in a
14  private mediation and prior to filing a reply by defendants on
15  the motion to dismiss, the parties notified the Court that they
16  had reached a settlement in principle of all claims and they
17  moved for preliminary approval.
18           On April 6, the Court preliminarily approved the
19  settlement and ordered notice to the class.  I must first
20  determine whether the settlement class may properly be
21  certified.  The Second Circuit has found that numerosity is
22  presumed when a class consists of more than 40 individuals.
23  Plaintiff need not set forth an exact class size to establish
24  numerosity.  Here, over 74,000 claim packages have been mailed
25  to potential class members and nominees.  The Court concludes

that joinder is impracticable in this action and so that numerosity requirement is satisfied.  Commonality is satisfied if the plaintiffs' grievances share a common question of law and fact.  In general, where putative class members have been injured by similar material misrepresentations and omissions, commonality is satisfied.

In this case, the claims are based on the same alleged misstatements and omissions concerning the fund's level of liquidity, and so I conclude the commonality requirement is satisfied.

With regard to typicality, it's satisfied when each member's claim arises from the same course of events and each class member makes similar legal arguments to prove defendants' liability.

Plaintiff represents the interests of class members that purchased shares of the fund during the class period.  Their claims arise from the same rights as other class members, and they were injured -- or at least allegedly so -- by the same misstatements and omissions that I discussed in my commonality analysis.  I conclude the typicality requirement is satisfied.

The adequacy of representation inquiry looks at whether plaintiffs' interests are antagonistic to the interests of other members of the class, and whether plaintiffs' attorneys are qualified, experienced, and able to conduct the

1  litigation.  There is no evidence that plaintiffs have any
2  interest antagonistic to others in the class and, as I'll
3  discuss later, I'm satisfied that class counsel is qualified,
4  experienced, and capable of representing the class.  So the
5  adequate representation requirement is satisfied.
6          There's an implicit requirement of ascertainability in
7  Rule 23(a).  Here, the class can be identified with regard to
8  objective criteria and so the class is ascertainable.
9          Now, under 23(b)(3), it is necessary to inquire
10 whether questions of law in fact common to the class
11 predominate over any questions affecting only individual
12 members, and that class treatment would be superior to
13 individual litigation.
14         Common issues include whether defendants made material
15 misstatements and omissions which injured class members.
16 Claims are asserted under the '33 Act alleging that defendants
17 failed to disclose that the fund was not maintaining an
18 appropriate level of portfolio liquidity and made materially
19 false and misleading statements regarding the amount of
20 illiquid securities held by the fund.
21         I hold that common factual and legal questions under
22 the '33 Act predominate over individual issues.  A class action
23 is superior to other methods adjudicating the controversy.
24 Claims may be too small to pursue individually.  Individual
25 claims would likely be wasteful and repetitive and it would be

at the risk of disparity and inconsistent outcome.  So I will certify the class for settlement purposes.

When a class is certified under (b)(3), the Court must direct that class members receive the best notice that is practicable under the circumstances.  Notice must clearly and concisely state the nature of the action, the definition of the class, the class claims, issues or defenses, that a class member may enter an appearance through an attorney if they desire, and that the Court will exclude class members who request exclusion, and describe the time and manner for requesting exclusion, and the binding effect of a class judgment.  I reviewed the class notice and it satisfies these requirements.

From April 20 to June 15, the claims administrator, Gilardi & Company, distributed more than 74,000 copies of the claim package to class members and their nominees, including banks, brokers, and other institutions.  Gilardi also caused the claim package to be published by depository trust on the DTC legal notice system, which allows participating bank and broker nominees to review the claim package and contact the claims administrator to obtain other copies of the claim package.  There was also a published summary notice in *The Wall Street Journal* and it was transmitted over the PR news wire.

Gilardi established and maintains a toll-free number to respond to questions and also a website for information.

The deadline to object and/or request exclusion was June 2nd. As of June 15, Gilardi had received no requests for exclusion. One objection was received by the Court on June 5. I conclude notice was satisfied.

Rule 23(e) requires that the Court consider whether or not the settlement is fair, reasonable, and adequate to the members of the class.

The standpoint of procedural fairness, after the plaintiffs filed their opposition in the motion to dismiss, the parties participated in a mediation before former District Court Judge Layn Phillips. In preparation for the mediation, prepared mediation statements, answered questions posed by Judge Phillips; and although they didn't reach an agreement during the mediation session, they continued their discussions. Ultimately, the parties reached an agreement in principle to settle the action for 14.25 million on January 6, 2017. After some confirmatory discovery, a stipulation was submitted to the Court. I conclude the negotiations were undertaken by the parties in good faith and at arm's-length.

I've considered the complexity, expense, and likely duration of the litigation. The defendants had an argument that the value of a mutual fund share is strictly a function of the net asset value and the NAV decreases only when the value of the securities in a fund's portfolio decreases. Therefore, they argued, that any misstatements or omissions about the fund

itself could have no effect on the NAV and, thus, could not have caused plaintiffs' purported losses.  Were the Court to deny that motion, the parties would have proceeded with protracted and expensive litigation, including time-consuming and expensive discovery and motion practice.

Motion practice may have led to a trial.  And then whatever the decision at trial -- presumably by a jury -- there would be the post-trial motions and a lengthy appeal process.

Now, the reaction of the class is one of the matters to be considered.

Mr. Jeffrey Harris has objected as the settlement is inadequate to compensate class members for their losses.  He believes class counsel only entered into the settlement so they could be paid sooner and not because it was the best deal they could get for the class.  He would have preferred that lead counsel took the case to trial.

He also objects to the plan of allocation.  He believes that a class member's gains should not be considered in determining whether a class member is entitled to receive money from the settlement.  He lays out a method that he believes should be used to determine the claims.  He objects to the release of claims against lead counsel or the claims administrator.  He claims that a class member's potential claims against the administrator should only be released after that class member has received his share of the settlement.  He

1    argues that class members should not have to release claims
2    against lead counsel, because lead counsel was appointed by the
3    Court and was not chosen by the class, and because lead counsel
4    should not be allowed to determine who may bring future claims
5    against lead counsel.
6             Finally, he claims that the release section of the
7    notice in proof of claim is difficult to have read and
8    understand and asks the Court to direct the parties to draft a
9    simpler version.  He objects to the award of attorneys' fees
10   and expenses because he feels that lead counsel did not
11   adequately represent the class and should not be paid until
12   they achieve a more favorable result.
13            Further, he asks that the Court allow class members a
14   chance to object to the settlement before having to decide
15   whether to exclude themselves from the settlement, and a second
16   chance after that to exclude themselves if and when a
17   settlement is approved.  He contends that it is unjust to
18   require class members to decide whether to request exclusion
19   before knowing whether the settlement will be approved.
20            Lastly, he asks the Court to give disproportionate
21   consideration to any objections received because he claims
22   there are likely many more people who are unhappy, but who
23   didn't file objections because they don't think it's worth it.
24            Lead counsel maintains that the plan of allocation,
25   which provides for offsetting of gains and losses, is fair to

all class members because it allows class members who suffered large or overall losses to recover more money from the limited fund that class members who suffered smaller overall losses as a result of gains in their transactions during the class period.

With regard to the release, lead counsel notes that it and the claims administrator are only protected if the released parties act in accordance with the settlement agreement in making distributions under the plan.  They also argue the release language is sufficiently clear.  Finally, they argue that requiring class members to decide whether to opt out or exclude themselves, but not both before settlement is approved, is reasonable and well-established practice.

I've considered the objections and I've concluded that they do not warrant on their own rejection of the settlement. I'm going to discuss the proposed attorneys' fee award which has been objected to and I'll give you my views on that.

With regard to the release point, I accept the proposition that lead counsel and the claims administrator are not released unless they comply with the terms of the settlement agreement.  If they do, then it seems to me it's appropriate they be released.

In terms of objecting and excluding, the Court has followed the proper and appropriate and customary procedure.  I recognize that there's authority that I could allow an

1      additional opt-out period, if warranted.
2            Here, before class members are deciding whether or not
3      to opt out, they know the amount of the proposed settlement.
4      So this is not a situation where the class is certified and
5      somebody is deciding whether to opt out and they may not opt
6      out thinking that there is going to be some different type of a
7      settlement, maybe much larger than the one that is ultimately
8      proposed, then a court can conclude that there should be a
9      second opt-out period.  Here, this Court concludes that it is
10     not warranted on the facts of this case.
11           Now, I've considered the stage of the proceedings and
12     the amount of discovery conducted.  There was an investigation
13     of the facts in connection with preparing the consolidated
14     amended complaint.  The plaintiffs engaged experts in mutual
15     funds and in valuations of distressed securities.  So this is
16     not a case where we have depositions, but we did have the
17     confirmatory discovery and I am satisfied that that factor is
18     certainly not strongly in favor of the settlement, but doesn't
19     stand to a level where it's a reason to reject the settlement.
20           I've considered the risks of establishing liability,
21     damages, and maintaining the class action through trial.  It
22     looks to me that this would have been a difficult case not just
23     on liability, but also on the damage theories.
24           With regard to the ability to withstand greater
25     judgment, at the time of the settlement, both the fund and the

1   adviser were facing financial difficulties.  There was an SEC
2   suspension of all redemptions and the fund is currently being
3   liquidated pursuant to a plan of liquidation.  So there was
4   some real risk here that certain of the defendants would be
5   unable to pay the amount of a judgment if the case were taken
6   to trial.
7        I've also looked at whether the settlement amount is
8   in a range of reasonableness.  In part because of the factors
9   that I've considered, and even recognizing that, on a good day,
10  the total damage amount might be something like 169 million,
11  and this is about an 8.4 percent, it's still a significant
12  percentage.  Given all of the other uncertainty, it's within
13  the range of reasonableness.
14       Now, this settlement is contingent on the approval of
15  the settlement of a derivative case in Delaware Chancery Court.
16  There was a hearing held before Judge Travis Laster and the
17  settlement was, in fact, approved yesterday.
18       The plan of allocation, again, I've reviewed and it
19  appears to me to be fair.
20       In terms of the overall settlement, the release, and
21  the consideration exchanged between the parties, I conclude
22  that the settlement amount is fair, reasonable, and adequate to
23  the members of the class.
24       With regard to the attorneys' fee application, lead
25  counsel seeks attorneys' fees in the even amount of 1,425,000

1  or ten percent of the settlement fund, plus interest and
2  reimbursement of expenses in the amount I mentioned before.
3         I've looked at the *Goldberger* standard, an opinion
4  written by the late Judge Joseph McLaughlin, 2000, and I've
5  applied the standards in *Goldberger*. I've looked at the time
6  and labor expended by counsel. Here, lead counsel states it's
7  expended more than 2700 hours in pursuing the action; and that
8  their regular hourly rates, which are between 460 and 980 for
9  attorneys, and 250 and 675 for forensic accountants, which
10 rates I consider are on the high end, but the lodestar is only
11 a cross-check, the lodestar is actually in excess of the
12 percentage of the fund that is sought. So the lodestar is
13 1,466,000, slightly more than the amount. So it serves as
14 useful cross-check and I consider it solely for that purpose.
15        I've considered factors that I've considered in
16 connection with the approval of the settlement, including
17 magnitude, complexities, and risks. I've considered the
18 quality of the representation. The firms on the other side of
19 the case are nationally known firms: Kramer Levin, Milbank
20 Tweed, Ropes & Gray. So I conclude that lead counsel
21 diligently and with quality represented the interests of the
22 class.
23        I've looked at the fee in relation to settlement.
24 I've said it's ten percent. I've considered public policy
25 considerations. It's appropriate that people, lawyers, be

1   compensated for their work in pursuing a claim of this type.

2           As to the expenses, they are claimed in the amount of
3   267,350.71.  And 242,000 or so was expended on consultants who
4   provided expertise and analysis on the mutual fund industry and
5   the valuation of the types of securities.  In addition, the
6   overall expenses include fees to be paid to Judge Phillips for
7   acting as mediator.  The remaining expenses include $18,729.33
8   towards routine litigation expenses such as online research,
9   court reporters, out-of-town travel, copying, and filing costs.
10  So the expenses are reasonable.

11          As I see it at this stage, attorneys' fees and
12  expenses of $1,692,350.71 are awarded.

13          Now, the 90-day period provided for under the statute
14  has not yet expired and appears that it will not expire until
15  July 10th.  So my comments about the settlement and my
16  inclination to approve the settlement is provisional and it is
17  subject to hearing the thoughts, if any, from the appropriate
18  state and federal regulators.

19          So I will enter no order today.  I will wait till July
20  10th to see what I receive.  I reserve the right to reconvene
21  with counsel if there are matters that I feel should be
22  addressed.  If there are not or there is nothing submitted,
23  then it would be my expectation that I would be signing the
24  tendered orders.

25          Is there anything further from the plaintiff?

H6NVTHIC

1     MR. LIGHT:  No, your Honor.  Thank you.
2     THE COURT:  From the defendants?
3     MR. SKINNER:  Only one small item, your Honor.
4     I misspoke on the phone yesterday and said July 10th
5  was the date.  Per the affidavit, July 11th is the date.
6     THE COURT:  Thank you very much.  I appreciate your
7  clarifying that.
8     Unless there's anything else, I thank you all.
9     I congratulate you for working hard on the settlement.
10 I appreciate that you brought the word back to your clients
11 that there is some wisdom in negotiating up front.  Presumably
12 at the settlement table, one can take into account value of the
13 expected motions, prospects that a motion to dismiss could be
14 granted or denied.  So there's a lot in it for both sides in a
15 case to consider doing that.  I commend you for your wisdom and
16 your diligence.
17     We are adjourned.
18                         *    *    *